THOMAS C. ROSER, Plaintiff-Appellee, v. KAREN ANDERSON, Defendant (Government Employees Insurance Company, Inc., Defendant-Appellant).

Second District   No. 2—91—0297

Opinion filed December 16, 1991.

Robert Marc Chemers, of Pretzel & Stouffer, Chartered, of Chicago (Scott O. Reed, of counsel), for appellant.

Law Offices of G. Douglas Grimes, of Waukegan (G. Douglas Grimes, of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Defendant Government Employees Insurance Company, Inc. (GEICO), appeals the trial court's grant of summary judgment in favor of plaintiff, Thomas C. Roser, who was GEICO's insured. GEICO asserts that the court erred in finding as a matter of law that section 143a—2(2) of the Illinois Insurance Code (the Insurance Code) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2)) did not relieve GEICO of the obligation to offer plaintiff additional uninsured motorist coverage in 1989 when plaintiff renewed his policy of insurance with GEICO and increased his limits of bodily injury liability coverage above the statutory minimum.

Plaintiff first purchased automobile insurance from GEICO in 1981, at which time he purchased both bodily injury liability coverage and uninsured motorist coverage at the then statutorily mandated minimum of $15,000 per individual and $30,000 per occurrence (Ill. Rev. Stat. 1981, ch. 95½, par. 7—203), which were automatically increased in 1988 to $20,000/$40,000 when the statutory minimum lim-

its were increased (Ill. Rev. Stat. 1989, ch. 95½, par. 7—203). Every six months until February 1989 plaintiff continued to renew such insurance coverage but always at the minimum limits allowed. However, in February 1989, plaintiff increased his bodily injury liability coverage to $50,000/$100,000.

In May 1989, plaintiff was involved in an auto accident. The operator of the other car, defendant Karen Anderson, paid to plaintiff Anderson's bodily injury policy limits of $25,000, which was insufficient to pay all of plaintiff's expenses. Plaintiff then sought declaratory relief to reform his policy of insurance with GEICO to provide $50,000/$100,000 uninsured and underinsured motorist coverage based on GEICO's failure to offer additional uninsured motorist coverage to plaintiff at the time when plaintiff increased his bodily injury liability coverage in February 1989. As an affirmative defense, GEICO asserted that the Insurance Code provided that in a renewal or supplemental policy of insurance an insurer need not offer additional uninsured motorist coverage to an insured who had elected either less uninsured coverage than his bodily injury liability limits or rejected bodily injury limits in excess of the statutory minimum. Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2).

The parties stipulated that GEICO neither offered plaintiff additional uninsured motorist coverage in 1989 nor did plaintiff request such coverage in writing at that time. Plaintiff further alleged that GEICO never offered plaintiff additional uninsured motorist coverage prior to 1989, an assertion that GEICO did not deny or contradict.

The court struck GEICO's defense as a matter of law, granted plaintiff's motion for summary judgment, and reformed plaintiff's insurance policy to provide uninsured and underinsured motorist coverage of $50,000/$100,000. GEICO filed its original notice of appeal (*Roser v. Anderson*, No. 2—90—0660, June 15, 1990). Subsequently both Roser and GEICO filed timely cross-motions in the trial court for sanctions (134 Ill. 2d R. 137). The trial court denied GEICO's motion for sanctions. However, the trial court reserved ruling on Roser's motion pending our disposition of GEICO's appeal. We dismissed GEICO's appeal for lack of jurisdiction, finding both that the timely motions for sanctions rendered GEICO's initial notice of appeal ineffective, and, absent a finding that there was no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a), no final and appealable order was presented. (*Cashmore v. Builders Square, Inc.* (1990), 207 Ill. App. 3d 267.) The court having now made such a finding, GEICO again appeals.

GEICO asserts that the court incorrectly interpreted section 143a—2(2) of the Insurance Code relative to its affirmative defense. GEICO asserts that plaintiff's increase in his bodily injury liability limits in 1989 was nevertheless a "renewal or supplementary policy" (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2)), and plaintiff's decision in 1981 to purchase the minimum limits of coverage was a rejection of "limits in excess of that required by law." (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2).) Thus, GEICO asserts that section 143a—2(2) relieved it of its obligation to offer uninsured motorist coverage to plaintiff in 1989 when he increased his bodily injury liability limits above the statutory minimum.

In contrast, plaintiff asserts that section 143a—2(1) requires that an insurer at some time provide an insured with the opportunity and information necessary to make an informed election either to purchase or to reject additional uninsured motorist coverage before the renewal exception of section 143a—2(2) is effective. Because GEICO never made such offer or supplied such information, section 143a—2(2) is inapplicable. Moreover, plaintiff argues that GEICO's position is contradicted by existing law and seeks the imposition of sanctions (134 Ill. 2d R. 137).

■ Initially we address GEICO's assertion that this is a question of first impression and, in contrast, plaintiff's contention that GEICO's appeal is frivolous in light of the existing precedent and warrants the imposition of sanctions (134 Ill. 2d R. 375(b)). Section 143a and its predecessors have been subjected to judicial construction on numerous occasions. (*E.g., Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430; *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419.) However, the issue in such cases has been the adequacy of the offer made by the insurer and the effect of an inadequate offer, which results in the implication by law of increased coverage. See *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 478.

The issue now before us is distinguishable because it is undenied that no offer of either uninsured or underinsured motorist coverage was ever made. Rather, because plaintiff initially purchased bodily injury liability and uninsured motorist coverage at the statutorily mandated minimum limits, the purchase of additional uninsured or underinsured motorist coverage was precluded. Therefore, the necessity to offer any additional uninsured or underinsured motorist coverage was equally precluded. Thus, the issue presented here is whether the initial purchase of one type or amount of coverage is an election to reject all future other possible coverage. Notwithstanding the abun-

dance of precedent on the issue of offers of uninsured and underinsured motorist coverage, which is instructive in determining the legislative intent in this instance, GEICO is correct in its contention that this is a question of first impression, and this is neither a frivolous appeal nor an appropriate situation for the imposition of sanctions.

It is fundamental that our overriding objective in interpreting section 143a—2(2) of the Insurance Code is to ascertain and give effect to the intent of the legislature. (*M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 397.) Equally fundamental are the maxims that guide our determination of the legislative intent. We must look first to the plain language of the statute. (*Lake County Board of Review v. Property Tax Appeal Board* (1989), 192 Ill. App. 3d 605, 616-17.) Language is to be given its ordinary and popularly understood meaning. (*People v. Haywood* (1987), 118 Ill. 2d 263, 276.) In addition to the language so chosen by the legislature, the court should consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby. *People v. Alejos* (1983), 97 Ill. 2d 502, 511.

In determining the intent of the legislature, we must consider the statute as a whole and construe each part or section together with every other part or section and not any part alone. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318.) Whenever possible, every word, clause, and section of a statute should be attributed some reasonable meaning. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297.) An interpretation that avoids absurd results is favored (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341), and an interpretation that renders any part of the statute superfluous must also be avoided. *People v. Singleton* (1984), 103 Ill. 2d 339, 345.

█ The Insurance Code required GEICO to provide underinsured motorist coverage to plaintiff in an amount equal to the amount of uninsured motorist coverage provided (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(5)). Plaintiff sought to reform the amount of underinsured motorist coverage of his policy of insurance with GEICO, which was thus determined by the amount of his uninsured motorist coverage. The uninsured motorist coverage requirements of the Insurance Code are, therefore, directly at issue in this instance, and GEICO's initial argument that the uninsured motorist coverage requirements of the Insurance Code are not relevant to plaintiff's claim is without merit. (See *Rutter*, 190 Ill. App. 3d at 478 (inadequate offer of uninsured motorist coverage should result in implication of underinsured motorist coverage equal to bodily injury liability limits); *Eipert v. State*

*Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 637 (failure to plead uninsured motorist coverage provisions of Insurance Code fatal to plaintiff's claim for underinsured motorist coverage).) We thus turn to the uninsured motorist coverage requirements of the Insurance Code applicable to plaintiff's policy of insurance in February 1989, which provided:

"§143a—2. (1) Required offer of additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless uninsured motorist coverage as required in Section 143a of this Act is offered in an amount up to the insured's bodily injury liability limits.

(2) Right of election or rejection of additional uninsured motorist coverage. The named insured may elect to purchase limits of uninsured motorist coverage in an amount up to the bodily injury liability limits on the insured motor vehicle or reject the offer of additional uninsured motorist coverage provided that the uninsured motorist coverage maintained on such vehicle is not less than the limits as set forth in Section 7—203 of the Illinois Vehicle Code. In those cases where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or rejects limits in excess of those required by law, the insurer need not offer in any renewal or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." Ill. Rev. Stat. 1987, ch. 73, par. 755a—2.

■ Because an insured may not purchase uninsured motorist coverage in excess of his bodily injury liability coverage, GEICO was under no obligation to offer plaintiff additional uninsured motorist coverage prior to 1989 when plaintiff had only the statutory minimum bodily injury liability coverage. (See *Fuoss,* 118 Ill. 2d at 435 (purchase of more protection for insured in uninsured motorist coverage than provided to public in bodily injury liability coverage is "repugnant to our system of justice").) However, in 1989 an insurer was required to offer an insured the opportunity to purchase additional uninsured motorist coverage in an amount up to the insured's bodily injury coverage if such bodily injury liability coverage was in excess of

the statutory minimum, and no policy of insurance was to be *renewed* absent such offer. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(1).) Thus, GEICO was required to offer plaintiff uninsured motorist coverage of $50,000/$100,000 in 1989 when it renewed plaintiff's insurance policy, and GEICO's admitted failure to so do justifies reformation of the policy to include such uninsured and underinsured motorist coverage. See *Makela v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 38, 42; *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 337 (additional underinsured motorist coverage will be implied by law into policy if insured fails to offer either such insurance or uninsured motorist coverage).

■ However, GEICO asserts that section 143a—2(2) of the Insurance Code renders plaintiff's initial purchase of the minimum statutorily required bodily injury liability coverage in 1981 a rejection of excess uninsured motorist coverage. Such an interpretation of the statute is unwarranted for several reasons.

First, the interpretation of section 143a—2(2) of the Insurance Code urged by GEICO would render the inclusion of the term "renewed" in section 143a—2(1) mere surplusage and meaningless. If an initial purchase of statutory minimum levels of bodily injury liability coverage was to be construed as an election not to purchase additional uninsured motorist coverage, then an offer of additional uninsured motorist coverage would never be necessary in a renewed policy. The prohibition that "[n]o policy *** shall be renewed *** unless uninsured motorist coverage *** is offered in an amount up to the insured's bodily injury liability limits" (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(1)) would be meaningless.

Second, the language of section 143a—2(2) itself plainly requires that an insured reject limits of uninsured motorist coverage in excess of that required by law. "Reject" is commonly defined as "to refuse to take, agree to, accede to, use, believe, etc." (Webster's New Universal Unabridged Dictionary 1524 (2d ed. 1983)), and "rejection," a term having legal significance, is defined as an offeree's communication to an offeror that the terms of the offeror's proposal are refused (Black's Law Dictionary 1288 (6th ed. 1990)). Similarly, "election" is defined both by Webster and Black as "the *act* of choosing," and Webster further defines "election" in a legal context as "the choice between two rights mutually inconsistent or alternatives. (Emphasis added.) (Black's Law Dictionary 517 (6th ed. 1990); Webster's New Universal Unabridged Dictionary 582 (2d ed. 1983).) Thus, some action on GEICO's part offering plaintiff additional uninsured motorist coverage or informing plaintiff that such coverage was available

was necessary before plaintiff could act to "elect to reject" such coverage. Such interpretation of the words "reject" and "elect" is further supported by both the legislative history of the Insurance Code and the courts' interpretation of both such history and the legislative intents behind the uninsured and underinsured provisions of the Insurance Code.

During the legislative debates prior to the passage of Public Act 81—1426 (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2), which was the predecessor of the statute before us and which added the comprehensive uninsured and underinsured provisions in language almost identical to that now before us, Senator Berman commented that " 'what we're saying is that it is going to be up to the insured *upon being advised as to what is available to him to decide what he wants to buy* and what he wants to pay for \*\*\* and I'm sure that the department [of Insurance] will require them to in the policy forms, *to spell out what they are offering, what is being paid for and what the coverage is.* Without this kind of clarifying language, you're going to find *some companies* charging more for coverage that the insured doesn't want \*\*\* or on the other hand, *not offering what the insured is willing to pay for.*' " (Emphasis added.) (81st Ill. Gen. Assem., Senate Proceedings, June 27, 1980, at 73, quoted in *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 334.) Thus, *Tucker* required an informed decision by the insured after an explanation of coverage is provided by the insurer, an interpretation adopted by our supreme court in *Cloninger* (109 Ill. 2d at 424-25).

Finally, consistent with *Cloninger*, the amendment of section 143a—2, effective January 1, 1990, and February 5, 1990, clarified the legislature's intent that an insurer is to provide an insured with the information necessary to make an informed decision whether to purchase or to reject additional uninsured motorist coverage. An amendment to a statute is presumed to have been made for some purpose, and an amendment of an unambiguous statute is presumed to change the original statute. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 271.) However, if the circumstances surrounding the change indicate that the legislature intended to interpret the original act, the presumption of change is rebutted (*O'Connor*, 81 Ill. 2d at 271), and a subsequent amendment is an appropriate source of discerning legislative intent. (*O'Connor*, 81 Ill. 2d at 271-72; *People v. Scott* (1974), 57 Ill. 2d 353, 358-59.) The language of an amended statute must be considered both in light of the need that created the amendment and the purpose it serves. (*People v. Richardson* (1984), 104 Ill. 2d 8, 16.) Thus, a detailed consideration not only of the statute applicable in

1989, but its amendment since that time, is necessary. The uninsured motorist coverage requirements of the Insurance Code that became effective in 1990, with deletions and additions to the same provision as applicable to GEICO's policy of insurance with plaintiff noted, provides:

"§143a—2. (1) ~~Required offer of~~ Additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle *designed for use on public highways and required to be* [emphasis added] registered ~~or principally garaged~~ in this State unless uninsured motorist coverage as required in Section 143a of this Code is *included* ~~offered~~ in an amount *equal* ~~up~~ to the insured's bodily injury liability limits *unless specifically rejected by the insured. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7—203 of The Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.*

(2) Right of ~~election or~~ rejection of additional uninsured motorist coverage. *After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection.* The applicant ~~named insured~~ may ~~elect to purchase limits of uninsured motorist coverage in an amount up to the bodily injury liability limits on the insured motor vehicle or~~ reject ~~the offer of~~ additional uninsured motorist coverage *in excess of* ~~provided that the uninsured motorist coverage maintained on such vehicle is not less than~~ the limits ~~as~~ set forth in Section 7—203 of the Illinois Vehicle Code. In those cases, *including policies first issued before July 1, 1991,* where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or *to reject* ~~rejects~~ limits in excess of *those* ~~that~~ required by law, the insurer need not *provide* ~~offer~~ in any renewal, *reinstatement, reissuance, substitute, amended, replacement* [emphasis added] or supplementary policy, coverage in excess of that elected by the insured in connec-

tion with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." Pub. Act 86—1155, eff. July 1, 1991.

Thus, an insurer must now provide its insureds with "a brief description of the coverage and advise them of their right to reject the coverage" (Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(1)). The amendment further provides that an application must contain a place for the insured to indicate rejection of uninsured motorist coverage in excess of that required by statute (Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(2)), which further clarifies that the legislature intended some express conduct by an insured as an indication of his election to reject additional uninsured motorist coverage. Absent such express rejection, an insured is automatically provided uninsured motorist coverage in an amount equal to his bodily injury liability coverage (Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(1)). Prior to the amendment, such result was judicially achieved through statutory interpretation requiring an informed decision and reformation of the contract of insurance in the absence of such informed decision by the insured to reject such additional uninsured motorist coverage. See, *e.g., Rutter*, 190 Ill. App. 3d at 478.

Section 143a—2(2) as applicable in 1989 to this policy of insurance provided that "where the insured has elected to purchase *** or rejects" additional insurance coverage, an insurer need not offer such insurance in a "renewal or supplementary policy" unless requested in writing by the insured. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2).) However, that language was amended to "where the insured has elected to purchase *** or *to* reject" such coverage, an insurer need not provide such coverage "in any renewal, reinstatement, reissuance, substitute, amended, replacement or supplementary policy" unless requested in writing by the insured (Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(2)). Thus, by placing the infinitive "to" before the verb "reject" in the amendment, the legislature further clarified its intent to express action or conduct.

An insured's active election or choice between two known and understood alternatives of uninsured motorist coverage at only the statutory minimum or at a higher level up to the level of his bodily injury liability limits is necessary before an insurer may renew a policy of insurance without an offer of uninsured motorist. Such choice only occurs if an insured has the information necessary to make an informed decision, and only the insurer can provide the insured with the necessary information. (See *Cloninger*, 109 Ill. 2d at 424-25 (offer of underinsurance requires information necessary so that insured may make

informed decision).) An insured's mere implicit rejection of additional insurance by the purchase of the legally mandated minimum coverage limits is not an informed choice and is insufficient to allow an insurer to provide uninsured motorist coverage in an amount less than bodily injury liability limits.

The amendment further clarified that *any* subsequent policy is subject to an insured's prior express election of uninsured motorist coverage. Therefore, although GEICO correctly asserts that section 143a—2(2) applies to·*any* subsequent policy of insurance issued by an insurer to an insured, GEICO fails to consider the effect of section 143a—2(1), which requires as a prerequisite to application of section 143a—2(2) that an insured make an informed decision to elect to reject additional uninsured motorist coverage. Thus, because GEICO failed to provide plaintiff with the information necessary or the opportunity to make such informed choice, GEICO cannot avail itself of section 143a—2(2).

The judgment of the trial court striking GEICO's affirmative defense and granting summary judgment for plaintiff is affirmed.

Affirmed.

DUNN and McLAREN, JJ., concur.