THIRD DIVISION

July 22, 1998 

No. 1-96-3465

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

DR. ASHWIN PATEL, DR. SATYA AHUJA, DR. ANTHONY STAGNOS, DR. JOSH TUNCA, and DR. HENRY TABE,

Plaintiffs-Appellants,

v.

ILLINOIS STATE MEDICAL SOCIETY,

Defendant-Appellee,

MEDICAL STAFF OF ALEXIAN BROTHERS MEDICAL CENTER, INC.,

Defendant.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 96CH4712

Honorable

John K. Madden,

Judge Presiding.

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Plaintiffs are physicians who are members of the Chicago Medical Society ("CMS").  Each is also a member of the Illinois State Medical Society ("ISMS") and/or on the staff at Alexian Brothers Medical Center, Inc. ("Alexian Brothers"), the organizations named as defendants.  Plaintiffs brought suit to obtain access to the records of ISMS and Alexian Brothers under section 107.75 of the Illinois Not for Profit Corporation Act ("the Act") (805 ILCS 105/107.75 (West 1994)), in order to ascertain whether a Dr. Dennis M. Brown (not a party to this action) had been reimbursed by both defendant organizations for the same expenses he had incurred while attending medical conventions.  At a pre-trial conference the circuit court dismissed plaintiff's action with prejudice because plaintiffs had "abused the settlement process."  Plaintiffs appeal from that order.  For the reasons set forth below, we reverse and remand.

FACTS

In May 1996, plaintiffs filed a mandamus action in the Circuit Court of Cook County, requesting that ISMS and Alexian Brothers be directed to grant plaintiffs access to "all receipts for airline tickets, hotels and cancelled checks reflecting payment for these expenses" for which defendants reimbursed Brown.  Plaintiffs stated that they wished to examine these records to determine "whether there have been any expense improprieties and possible double payments heretofore."

 The circuit court initially attempted to resolve the petition on an expedited basis because plaintiffs' counsel represented that Brown was scheduled to assume the office of President of CMS on June 8, 1996, and they wished to have the matter resolved before that date.  However, because of a delay in discovery occasioned by the plaintiffs' failure to produce witnesses or inform the defendants who their witnesses would be, the court determined that there could be no resolution before that date and decided to handle the case in its normal course.  

Alexian Brothers represented that it was taking the position of a mere "stakeholder" with respect to the records in its possession.  Counsel for Alexian Brothers stated that his client would turn over the records if the court so ordered, and did not have an independent position on the matter.  In July, the court entered an order directing Alexian Brothers to turn over to plaintiffs all documents relating to reimbursement of Brown for expenses for any American Medical Association (AMA) meetings he attended on behalf of Alexian Brothers in 1993, 1994 and 1995.  The court provided that after turning over those records, the suit would be dismissed with prejudice with respect to Alexian Brothers.  At a status hearing on July 29, plaintiffs' counsel stated that he had received the records ordered to be turned over.  In August, 
nunc
 
pro
 
tunc
 to July, the court dismissed Alexian Brothers with prejudice and without any award of attorneys' fees or costs.

It appears from statements of the court and counsel at the July 29 status call that in July plaintiffs also received some documents from Dr. Arvin Goyal, a trustee of ISMS.  There does not appear in the record before us any order of the court requiring ISMS to provide plaintiffs with any such records, although on July 10 the court ordered an 
in
 
camera
 inspection of the contents of a file Goyal had brought to his deposition but had refused to allow counsel for ISMS
(footnote: 1) to examine.  The document Goyal provided is not contained in the record on appeal.  Counsel for ISMS represented that Goyal had stated in his deposition that a particular portion of the document, apparently a computer printout, referred to reimbursements made to Brown for expenses incurred in attending the 1994 AMA interim meeting in Hawaii.
(footnote: 2)  Counsel for plaintiffs agreed that the documents "obviously" showed at least one double billing, but that plaintiffs wished to see "whether it was double-billed on others."  

At a status call in August, counsel for ISMS stated that plaintiffs had "arguably" shown a "proper purpose," as required by the Act (see 805 ILCS 105/107.75 (West 1994)) ("[a]ll books and records of a corporation may be inspected by any member *** for any proper purpose at any reasonable time") for inquiry into certain expenses for which Brown was reimbursed in connection with the 1994 meeting, and he was prepared to submit to plaintiffs an affidavit regarding those reimbursements.  Counsel for plaintiffs did not accept this offer, reiterating that plaintiffs wished to see the actual records.  The court ordered ISMS to bring in for an 
in
 
camera
 inspection records relating to payments made to Brown for expenses he had incurred in 1994.  At the next hearing, on August 15, after the court reviewed the records 
in
 
camera
, ISMS stated that it was willing to allow plaintiffs to make "extracts" from the records, which included copies of Brown's expense report and hotel bill, the expense check ISMS had issued to Brown, and a check Brown had written ISMS as a refund for the airfare.
  ISMS stated that it did not concede that plaintiffs had shown a proper purpose, nor that the court had so ruled, but that it had made the records available "in an effort to resolve this matter" and in the expectation that it would "bring this matter to a close."  The circuit court's order of August 15 required ISMS to allow plaintiffs' counsel to examine and make abstracts of the records submitted by Brown regarding the 1994 interim meeting of the AMA in Hawaii, but did not grant plaintiffs access to records regarding any 1993 or 1995 meetings nor the 1994 AMA annual meeting.  The court also ordered ISMS to produce to plaintiffs the affidavit regarding Brown's 1994 expenses.

Plaintiffs' counsel thereafter disseminated a letter to his clients (hereinafter "the client letter"), purporting to relate what had occurred in the litigation.  Among other statements, the client letter reported that ISMS had used dilatory tactics in resisting inspection and that the court had ruled that plaintiffs had established a proper purpose and counsel was entitled to review the records.  It also characterized the petition as having come to a "very successful conclusion" and stated that the records plaintiffs had received had established that Brown had received double reimbursements.  It appears that ISMS became aware of this letter when a copy of it was attached to a letter from plaintiffs to ISMS demanding that ISMS request Brown to resign from all positions he held with the organization.  

In reaction to the client letter, ISMS filed an "Emergency Motion for Injunction" in late August, which was heard on September 3.  ISMS appended to its motion the client letter, the letter from plaintiffs to ISMS, and a letter from plaintiffs to CMS demanding that it also request Brown to resign from any positions he held with that organization.  ISMS requested that the court enjoin plaintiffs and counsel from any further dissemination or publication of the client letter and that the court 
"enter sanctions against plaintiffs for the willful dissemination of false statements concerning this litigation including dismissal of the action and reasonable attorneys fees."  At the hearing on the motion, plaintiffs' counsel stated that he had not yet received a copy of the motion, although eight or nine pages of it had been faxed to him.  (The record reflects that the motion itself was only seven pages long, although including attachments it ran to more than twenty pages.)  Plaintiffs' counsel stated that he had not read the motion and he requested 28 days in which to respond.  Counsel for ISMS responded that the fax department of his law firm had told him that they had received a telephone call in which plaintiffs' counsel had told them that he had received five pages of the motion and did not need any more.  The court stated that "[w]e got [
sic
] to give him time to respond," but allowed ISMS to convert its motion to a motion for a temporary restraining order ("TRO").  The court stated that it would pass the case, allow plaintiffs' counsel to read the motion, and would then entertain argument on the TRO.  

When the case was recalled, on the same date, ISMS argued first (for approximately 5 pages of transcript) in favor of the TRO.  Afterwards, plaintiffs' counsel responded:

"MR. SMITH (Plaintiffs' counsel):  Basically, Judge, I don't think he has set forth in his petition the necessary elements for this restraining order.

Secondly, all of the items in here [the client letter] to my client are basically based on facts that have occurred in this courtroom as well as throughout the litigation.  At no time would you have ever entered an order ordering Alexian Brothers Medical Center to turn over records unless we had established proper purpose.

THE COURT:  Wrong, go ahead.

MR. SMITH:  You would never have ordered ISMS to turn over the records for examination if we had not established a proper purpose.

THE COURT:  Wrong, wrong.

MR. SMITH:  I have a copy of the August 15th hearing before you.

THE COURT:  To save some time, the remedy at law is sufficient so we don't have a proceeding, [
sic
] but we can go by way of a temporary restraining order because this is by way of defamation.

However, the settlement process has been so abused by the Plaintiffs in this particular case that this case is going to be dismissed with prejudice, that's going to be the sanction that the Court is going to impose in this particular case.

This case came before the Court under a questionable situation, the complaint that was brought was never tested by way of a motion to dismiss.  Instead, Counsel for the Medical Association did everything he could do to facilitate this matter in a way that would avoid litigation.  We attempted to settle this particular matter and the Plaintiffs, your clients, have done nothing but abuse the entire settlement process that was undertaken by the Defendants in this matter and by this Court and although this is an extraordinary sanction being imposed by the Court, this Court does not want to invite that type of conduct by attorneys when they enter into settlement negotiations.  For that reason, the case is dismissed with prejudice.  You have an appealable order, okay."

The written order of September 3 also reflects that the case was dismissed because plaintiffs "have abused the settlement process."  It provided that there was "no just reason to delay the appeal or enforcement" of the order.  At some point
(footnote: 3) plaintiffs filed a motion for costs and sanctions under section 14-104 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/14-104 (West 1994)) and Supreme Court Rule 137 (155 Ill. 2d R. 137), which it does not appear the circuit court ruled on, at least with respect to ISMS.  On September 30 plaintiffs filed a notice of appeal from the circuit court's September 3 order dismissing the case.  We reverse and remand.

ANALYSIS

First, although neither party has discussed the issue, we briefly note that the outstanding motion for costs and sanctions does not deprive us of jurisdiction to entertain this appeal.  A case is not finally disposed of and appealable under Supreme Court Rule 301 until the circuit court has ruled on all pending motions for sanctions.  
Marsh v. Evangelical Covenant Church
, 138 Ill. 2d 458, 467-68, 563 N.E.2d 459, 464-65 (1990) (appellate court lacks jurisdiction in the face of an outstanding motion for sanctions under section 2-611 of the Code (735 ILCS 5/2-611 (West 1994))); 
Cashmore v. Builders Square, Inc.
, 207 Ill. App. 3d 267, 273-74, 565 N.E.2d 703, 707 (1990) (appellate court lacks jurisdiction in the face of an outstanding motion for sanctions under section 2-611 of the Code (735 ILCS 5/2-611 (West 1994)) or Supreme Court Rule 137 (155 Ill. 2d R. 137)).  However, in this case the circuit court made a finding that there was no just reason to delay enforcement or appeal of its order dismissing the case.  That finding conferred jurisdiction on this court to consider the appeal under Supreme Court Rule 304(a) despite the outstanding motion for sanctions.  See 
Marsh
, 138 Ill. 2d at 468, 563 N.E.2d at 465; 
Cashmore
, 207 Ill. App. 3d at 274, 565 N.E.2d at 708; 
Roser v. Anderson
, 222 Ill. App. 3d 1071, 1073-74, 584 N.E.2d 865, 867-68 (1991).

ISMS asserts that the appeal should be dismissed as moot, however, in light of the facts that (1) Brown took office in June 1996 and his term has thus already concluded, and (2) in the client letter counsel (a) stated that the records plaintiffs had received had established that Brown had received double reimbursements and (b) characterized the lawsuit as having come to a "very successful conclusion."  

An appeal should generally be dismissed as moot where there remains no live present controversy between the parties.  
In re
 E.G.
, 133 Ill. 2d 98, 105, 549 N.E.2d 322, 325 
(1989).  "The existence of a real controversy is an essential prerequisite to appellate jurisdiction."  
In re
 Estate of Wellman
, 174 Ill. 2d 335, 353, 673 N.E.2d 272, 280 (1996); accord, 
Central States Import & Export Corp. v. Illinois Liquor Control Commission
, 405 Ill. 58, 59, 89 N.E.2d 903, 
904 (1950); 
Chaitlen v. Kaspar American State Bank
, 372 Ill. 83, 87, 22 N.E.2d 673, 675 (1939).  However, we find that there remains a controversy between the parties, and accordingly decline to dismiss the appeal in this case.  Although plaintiffs have received records which tended to establish one instance of double billing, they have not received all the records they sought.  They were entitled to all of the records they sought for which they showed a proper purpose.
(footnote: 4)  805 ILCS 105/107.75 (West 1994) ("[a]ll books and records of a corporation may be inspected by any member *** for any proper purpose at any reasonable time").  The circuit court never made a determination that plaintiffs had not shown a proper purpose for the other records they had requested.  Since there remained an unadjudicated controversy as to whether plaintiffs were entitled to the remaining documents which they sought, the matter cannot be considered moot.  See 
Weigel v. O'Connor
, 57 Ill. App. 3d 1017, 1027, 373 N.E.2d 421, 428 (1978) (where plaintiffs "plainly rejected" defendants' offer to produce less than all of the documents plaintiffs had demanded pursuant to the Illinois Business Corporation Act, a "real and substantial controversy continued to exist between the parties").  

We reject the arguments of ISMS that we should find mootness based on the client letter
(footnote: 5) or the fact that Brown is no longer president of CMS.  With respect to the latter argument, assuming that ISMS properly established that Brown's term has expired through its representation to that effect in its brief to this court,
(footnote: 6) plaintiffs never averred in their complaint nor at any time on the record that their 
sole
 motivation for requesting the records was to prevent Brown from taking office or expel him therefrom (although they did raise the fact that he was about to take office as a reason for their request that the case be handled on an expedited basis).  Rather, plaintiffs' stated purpose for examining the records was to determine "whether there have been any expense improprieties and possible double payments heretofore."  If this purpose was a proper one, which the circuit court never resolved, plaintiffs would be entitled to determine the extent of any impropriety, rather than being barred from any further investigation once it had been established that there was any impropriety at all.  See 
Weigel
, 57 Ill. App. 3d at 1027, 373 N.E.2d at 428.  Accordingly, the expiration of Brown's term does not moot the appeal.

The statement in the client letter regarding a "successful conclusion" does not necessarily connote that plaintiffs received all the relief they were seeking.  The context of the statement shows that counsel was referring to the successful resolution of the underlying legal issues in the suit (i.e. establishment of a proper purpose), not to having obtained all of the relief requested.  Moreover, these assertions would constitute at most an admission by plaintiffs, but since the statement was not made in court it would not be a judicial admission.  Accordingly, the statements would not in any event be preclusive of the issue, but would rather be considered among the totality of all pertinent facts.
(footnote: 7)  And it is clear that there does remain a controversy, as plaintiffs did not receive all of the records they sought.  As noted above, if plaintiffs' purpose of determining whether there had been "any expense improprieties" was a proper one, they would have the right to determine the extent of any impropriety.  Accordingly, we consider the contentions plaintiffs raise on appeal, that the dismissal constituted an abuse of discretion and violated their rights to procedural due process.
(footnote: 8) 

As courts avoid constitutional questions where the case may be decided on other grounds (
In re
 S.G.
, 175 Ill. 2d 471, 479, 677 N.E.2d 920, 924 (1997)), we turn first to examine whether the sanction imposed constituted an abuse of discretion.  We find the court did abuse its discretion in dismissing this case, as plaintiffs did not engage in any conduct warranting that sanction on the record before us.  It is clear that a court is vested with authority both under Supreme Court Rule 219 (155 Ill. 2d R. 219), and pursuant to its inherent authority to control its docket, to sanction a party for violations of its orders.  See 
Sander v. Dow Chemical Co.
, 166 Ill. 2d 48, 61-63, 65-67, 651 N.E.2d 1071, 1078, 1080 (1995).  The sanctions may be as severe as dismissal.  See 155 Ill. 2d R. 219(c)(v); 
Sander
, 166 Ill. 2d at 67, 651 N.E.2d at 1080.  A party may be sanctioned under Rule 219 even without having violated a specific court order, if it fails to comply with the Supreme Court Rules regarding discovery, requests for admissions, and pretrial procedure (Rules 201-230).  155 Ill. 2d R. 219(c).  But there must be sanctionable conduct.  It is clear that neither the letters plaintiffs wrote to ISMS and to CMS, nor the client letter, violated any specific order nor any Supreme Court Rule (which would allow a sanction without a violation of an order).  The only conduct of plaintiffs which could be construed as a violation is their failure in June to produce their witnesses for depositions.  However, this conduct clearly had nothing to do with the "settlement process" or the court's dismissal of the case.

In this case there were a number of conferences held off the record involving the court, plaintiffs' counsel, and counsel for ISMS (occasionally also counsel for Alexian Brothers).  From comments made on the record it appears that at least some of these conferences may have concerned settlement of the case.  But the court entered no orders nor did it make any statements on the record as to any tentative agreements which the parties may have reached.  The court might well justifiably have been frustrated if plaintiffs' counsel had, 
e.g.
, represented that his clients would be satisfied if ISMS turned over certain documents, then reneged on that promise.  However, there is no indication in the record that this occurred, and even if it had, "we cannot allow personal frustration alone to be the cause for dismissal."  
Walton v. Throgmorton
, 273 Ill. App. 3d 353, 360, 652 N.E.2d 803, 807 (1995).  The sanction of plaintiffs was not based on their failure to comply with an order of the circuit court or a Supreme Court Rule, and thus it was not warranted.

Moreover, even if it were appropriate to impose some degree of sanction on plaintiffs, dismissal was unwarranted.  When lawfully imposed, a court's decision to impose a particular sanction will be reversed only if the record establishes a clear abuse of discretion.  
Sander
, 166 Ill. 2d at 67, 651 N.E.2d at 1081.  However, "[t]he purpose of imposing sanctions is to coerce compliance with court rules and orders, not to punish the dilatory party."  
Sander
, 166 Ill. 2d at 68, 651 N.E.2d at 1081.  Sanctions under Supreme Court Rule 219(c) should be imposed "'to obtain compliance with discovery rules, rather than to dispose of litigation as a form of punishment.'"  
Walton
, 273 Ill. App. 3d at 360, 652 N.E.2d at 807, quoting 
United Excavating & Wrecking, Inc. v. J. L. Wroan & Sons, Inc.
, 43 Ill. App. 3d 101, 105, 356 N.E.2d 1160, 1163 (1976).  Dismissal is a "drastic sanction" which "should only be employed when it appears that all other enforcement efforts of the court have failed to advance the litigation."  
Sander
, 166 Ill. 2d at 67-68, 651 N.E.2d at 1081;
 accord, 
Besco v. Henslee, Monek & Henslee
, No. 4--97--0950, slip op. at 7 (June 12, 1998).  We are reluctant to find that dismissal was employed as a "last resort" when the record reveals that the party had no warning that dismissal was imminent.  
Walton
, 273 Ill. App. 3d at 359, 652 N.E.2d at 807 ("[t]he facts in this record show a disregard for the court's authority, but without some notice to Walton that a dismissal was imminent, we cannot find that the dismissal was used only as a last resort").

Dismissal appears to have been a first, not last, resort in this case.  At the July 29 hearing the court did disagree with oral statements of plaintiffs' counsel criticizing ISMS.  However, there is no indication on the record that plaintiffs' counsel was rebuked or warned that such statements would not be tolerated.  There is no indication that, apart from the case not being handled on an expedited basis, plaintiffs were ever censured or admonished before the case was dismissed.  Dismissal cannot be the first step a court takes, which, so far as is revealed by the record before us, was what occurred in this case.

ISMS argues that dismissal may be warranted when a party shows disregard or disrespect for the authority of a court even if the party has not violated any order of the court.  However, the authority it cites does not support the proposition that a party may be sanctioned without having violated an explicit rule of court or disobeyed a specific order of the court.  
Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.
, 262 Ill. App. 3d 636, 641, 634 N.E.2d 1319, 1323 (1994), the first case cited by ISMS, only stands for the proposition that a party may be sanctioned for destruction of evidence without an order prohibiting destruction.  The authority on which 
Shelbyville Mutual
 relied held that destruction of evidence may constitute "unreasonable noncompliance" with a Supreme Court Rule regarding discovery (specifically Rule 214, which allows a party to request production of tangible things for inspection and testing (155 Ill.2d R. 214)), for which Rule 219(c) allows a court to impose sanctions.  See 
Shelbyville Mutual
, 262 Ill. App. 3d at 641, 634 N.E.2d at 1323, citing 
American Family Insurance Co. v. Village Pontiac-GMC, Inc.
, 223 Ill. App. 3d 624, 627, 585 N.E.2d 1115, 1118 
(1992).  No "unreasonable noncompliance" has been shown in this case, however.  

Further, contrary to the representation of ISMS, the court in 
Chabowski v. Vacation Village Ass'n
, 291 Ill. App. 3d 525, 690 N.E.2d 115, 118 
(1997), affirmed a dismissal of a case not solely because of plaintiff's lack of respect for the court's authority, but also because plaintiff had violated at least one explicit order of the circuit court.  Any implication in 
dictum
 that 
no explicit order need be violated was based on the language in 
Sander
 that "'[w]here it becomes apparent that a party has willfully disregarded the authority of the court, and such disregard is likely to continue, the interests of that party in the lawsuit must bow to the interests of the opposing party.'"  See 
Chabowski
, 291 Ill. App. 3d 525, 690 N.E.2d at 118, quoting 
Sander
, 166 Ill. 2d at 69, 651 N.E.2d at 1081.  However, 
Sander
 made this statement in reviewing the 
severity
 of the sanction imposed, having already determined that the trial court had the 
power to sanction.  See 
Sander
, 166 Ill. 2d at 69, 651 N.E.2d at 1081.  In discussing the latter issue, 
Sander
 only endorsed the power of a court to dismiss for the violation of or failure to comply with court 
orders
:

"We also conclude that apart from Rule 219(c), a trial court, pursuant to its inherent authority, is empowered to dismiss a cause of action with prejudice 
for violations of court orders
.

***  

***  [T]he court in 
Bejda
[
 v. SGL Industries, Inc.
, 82 Ill. 2d 322, 328, 412 N.E.2d 464 (1980)] recognized the inherent authority of a trial court to dismiss a cause of action with prejudice 
because of a litigant's disregard of court orders
.  

Other jurisdictions have recognized a trial court's authority to dismiss a cause of action with prejudice 
based on a refusal to obey court orders
 to amend pleadings.  [Citations.]  This court has described judicial authority to dismiss a cause action [
sic
] with prejudice as 'the most effective sanction' against the 
disregard of court orders
.  [Citation.]  Thus, we acknowledge the inherent authority of a circuit court to dismiss a cause of action with prejudice 
for failure to comply with court orders
 where the record shows deliberate and continuing disregard for the court's authority."  (Emphasis added.)  
Sander
, 166 Ill. 2d at 65-67, 651 N.E.2d at 1080.

Sander
 makes clear that it is the violation of an order for which a court may impose a sanction, whereas "deliberate and continuing disregard for the court's authority" is but a circumstance to be considered in determining the severity of the sanction.

Moreover, the record does not reflect that plaintiffs or their counsel showed a lack of respect for the authority of the court in this case.  The client letter exemplifies at worst a trivialization of a court process by an attorney for purposes of "grandstanding" to a client by exaggerating a result.  This exaggeration may well have jeopardized a delicate settlement structure.  However, as previously noted, as frustrating as this may have been, it would not justify an abrupt sanction of dismissal.  See 
Sander
, 166 Ill. 2d at 67-68, 651 N.E.2d at 1081; 
Walton
, 273 Ill. App. 3d at 360, 652 N.E.2d at 807.

Finally, we note that even if the court had been justified in imposing the sanction of dismissal in this case, there would appear to be some force to plaintiffs' contention that they were deprived of due process in the procedure the circuit court followed.
(footnote: 9)  The standard of review for determining whether constitutional rights have been violated is 
de
 
novo
.  
In re
 Barbara H.
, 288 Ill. App. 3d 360, 365, 680 N.E.2d 471, 475 (1997).  First, although technically dismissal was one of the remedies ISMS requested in its injunction motion, it is clear that both parties' focus was on whether plaintiffs should be prohibited from further dissemination of the client letter, and the court's decision to dismiss the case was essentially 
sua
 
sponte
.  Further, plaintiffs' counsel was not given an adequate opportunity to respond to the motion.  He had no chance to respond in writing, and his opportunity to respond orally was scant at best.  As noted above, the court twice interrupted counsel, then cut him off entirely and dismissed the case with prejudice, after having explicitly stated that plaintiffs would receive an opportunity to respond in writing to the injunction motion and stating it would hear argument 
only
 on the TRO to which it allowed ISMS to convert its petition.  Although due process is a flexible concept, it is well established that at its heart is the "fundamental requirement" of an "opportunity to be heard at a meaningful time and in a meaningful manner."  
East St. Louis Federation of Teachers
, 178 Ill. 2d at 419, 687 N.E.2d at 1061-62, citing 
Mathews v. Eldridge
, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976).  Plaintiffs would not appear to have received such an opportunity.  

CONCLUSION

For the reasons above stated, we reverse and remand to the Circuit Court of Cook County for further proceedings consistent with this decision.

Reversed and remanded.

LEAVITT, P.J. and CAHILL, J., concur.

FOOTNOTES
1:  Although Goyal was a trustee of ISMS, he appears to have been sympathetic to the plaintiffs' position.  Plaintiffs' counsel represented to the court that it was through Goyal that plaintiffs would establish that they had a "proper purpose" (see 805 ILCS 105/107.75 (West 1994)) for seeking the records (although the proceedings were terminated before a hearing on proper purpose was held).  However, despite the possibly antagonistic relationship between Goyal and ISMS, it does not appear from the record that Goyal provided plaintiffs the document over the objection of ISMS.

2:  That portion of Dr. Goyal's deposition which is contained in the supplemental record provided to this Court appears to bear out that assertion, although since the documents themselves are not part of the record before us we cannot be certain that the document to which Goyal refers in his deposition is the same as the document later provided to the plaintiffs.

3:  The only copy of the motion for sanctions contained in the record on appeal is file-stamped September 24.  However, it would appear that it was in fact filed earlier than that date, as counsel for ISMS referred to a motion for sanctions in his argument on September 3 in support of the TRO, and in the circuit court's order of August 28 dismissing Alexian Brothers the court specifically stated that "plaintiffs' motion for costs or fees against Alexian Brothers Medical Staff is denied."  At any rate, the question of when the motion was filed is irrelevant to our resolution of this appeal; the only potentially relevant fact is that it does not appear the motion was ever ruled on with respect to ISMS.

4:  The right to examine records may even extend to records for which a proper purpose has not been directly shown, so long as one has been shown for some records:

"[t]he shareholder is 
not
 required to establish a proper purpose for each record he requests.  [Citation.]  'Once that purpose has been established, the shareholder's right [to inspect] extends to all books and records necessary to make an intelligent and searching investigation * * * [and] "from which he can derive any information that will enable him to better protect his interests."'"  (Emphasis added.)  
Meyer v. Board of Managers of Harbor House Condominium Ass'n
, 221 Ill. App. 3d 742, 748, 583 N.E.2d 14, 18 
(1991), quoting 
Weigel v. O'Connor
, 57 Ill. App. 3d 1017, 1027, 373 N.E.2d 421, 428 (1978), quoting 5 W. Fletcher, Private Corporations § 2239 at 779 (rev. vol. 1976). 

However, we need not decide the scope of plaintiffs' right at this juncture; it suffices 
to observe that they would at least be entitled to inspect those records for which they had shown a proper purpose.

5:  We note that this argument could have been raised before the circuit court.  Normally a party will not be allowed to present on appeal arguments which could have been, but were not, raised in front of the circuit court.  See 
Hulman v. Evanston Hosp. Corp.
, 259 Ill. App. 3d 133, 
145, 631 N.E.2d 322, 330 
(1994) (a reviewing court is limited to consideration of the grounds presented to the trial court).  However, an appellate court is obligated to examine its jurisdiction even if the parties 
never
 raise the issue.  
Shanklin v. Hutzler
, 277 Ill. App. 3d 94, 99, 660 N.E.2d 103, 106 (1995).  And, as noted in the text, the existence of a present controversy is a jurisdictional requirement.  
Estate of Wellman
, 174 Ill. 2d at 353, 673 N.E.2d at 280; 
Central States Import & Export
, 405 Ill. at 59, 89 N.E.2d at 
904; 
Chaitlen
, 372 Ill. at 87, 22 N.E.2d at 675.  Accordingly, it is not appropriate to apply waiver to a mootness argument, because mootness is at its core a lack of jurisdiction.

6:  The length of Brown's term is not established in the record, which will ordinarily prevent us from considering a fact on appeal.  See 
O'Brien v. City of Chicago
, 285 Ill. App. 3d 864, 874, 674 N.E.2d 927, 936 (1996) (reviewing court may not consider matter not contained in the record).  However, there is an exception to this rule when facts 
dehors
 the record establish mootness.  As our supreme court stated in 
La Salle National Bank v. City of Chicago
, 3 Ill. 2d 375, 379, 121 N.E.2d 486, 488 
(1954):

"Since the existence of a real controversy is an essential requisite to appellate jurisdiction, the general rule is that where a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, it will dismiss the appeal or writ of error even though such facts do not appear in the record.  [Citations.]  From the necessity of the situation courts allow facts which affect their right and duty to proceed in the exercise of their appellate jurisdiction, but which do not appear in the record before it, to be proved by extrinsic evidence. [Citations.]  Such a fact may be presented, as here, by motion supported by affidavit."  

Accord, 
Central States Import & Export
, 405 Ill. at 60, 89 N.E.2d at 
904, quoting 
Chaitlen
, 372 Ill. at 87, 22 N.E.2d at 675 ("'a reviewing court will dismiss an appeal where facts are disclosed which show that such a controversy does not exist, even though such facts do not appear in the record'"); 
People ex rel. Bernardi v. City of Highland Park
, 121 Ill.2d 1, 6, 520 N.E.2d 316, 318 
(1988) ("this court will dismiss an appeal as moot upon notice of facts not of record"); 
Johnson v. Quern
, 90 Ill. App. 3d 151, 155, 412 N.E.2d 1082, 1085 (1980) ("[w]here there are strange circumstances which render the issue on appeal moot, the appeal will be dismissed even though such facts do not appear in the record").  It appears that a court may take notice of facts establishing mootness no matter how those facts are brought to the attention of the court.  See 
People v. Lynn
, 102 Ill. 2d 267, 272, 464 N.E.2d 1031, 1034 (1984) (taking notice of fact brought to the court's attention during oral argument).

7:  The admission would not be the client letter, but rather the attachment of the client letter to the letter from plaintiffs to ISMS, which could constitute an admission by adoption.

8:  We note that plaintiffs argue in the alternative that even if the appeal were moot, this court should retain jurisdiction under the "collateral legal consequences" doctrine.  That doctrine allows a court to review a mooted case if collateral effects of the order under review survive its expiration.  
Brown v. Murphy
, 278 Ill. App. 3d 981, 988, 664 N.E.2d 186, 192 (1996), quoting 
In re Sciara
, 21 Ill. App. 3d 889, 893-894, 316 N.E.2d 153 (1974); accord, 
In re
 Phillips
, 62 Ill. App. 3d 408, 410-11, 379 N.E.2d 97, 99 (1978).  We would reject this argument were we to reach it.  The only collateral consequence of which plaintiffs complain is that ISMS would be entitled under section 5-118 of the Illinois Code of Civil Procedure to recover "full costs" from them because the action was dismissed.  See 735 ILCS 5/5-118 (West 1994).  However, it is a well-established rule that an appellate court will not review a cause merely to resolve the issue of costs.  
E.g.
 
Estate of Wellman
, 174 Ill. 2d at 353, 673 N.E.2d at 280
; 
La Salle National Bank
, 3 Ill. 2d at 379, 121 N.E.2d at 488 ; 
Central States Import & Export
, 405 Ill. at 59, 89 N.E.2d at 
904; 
Chaitlen
, 372 Ill. at 87, 22 N.E.2d at 675.  

9:  The procedures followed had to comport with due process considerations because plaintiffs had a liberty or property interest which has been interfered with by the State.  
East St. Louis Federation of Teachers, Local 1220, v. East St. Louis School Dist. No. 189 Financial Oversight Panel
, 178 Ill. 2d 399, 415-16, 687 N.E.2d 1050, 1060 (1997).  An interest is subject to due process protections if it is "secured by rules or mutually explicit understandings that support the claim of entitlement."  
East St. Louis Federation of Teachers
, 178 Ill. 2d at 416, 687 N.E.2d at 1060, citing 
Perry v. Sindermann
, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 579 (1972) and 
Board of Regents of State Colleges v. Roth
, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).  Section 107.75 of the Act provides that "[a]ll books and records of a corporation may be inspected by any member entitled to vote, or that member's agent or attorney, for any proper purpose at any reasonable time."  805 ILCS 105/107.75 (West 1994).  This statute "secures" plaintiffs' interest in the books and records, and accordingly due process considerations are relevant to proceedings thereunder.