*In re* A.G. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellant, v. Leslie G., Respondent-Appellee (A.G. *et al.*, Minors, Respondents-Appellants)).

First District (3rd Division)   No. 1—00—0002

Opinion filed September 12, 2001.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Deborah Pergament, of counsel), for appellants.

Rita A. Fry, Public Defender, of Chicago (Michaela J. Kalisiak and Joel Simberg, Assistant Public Defenders, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:
Respondents A.G., L.G., and B.G., minors, appeal from the

September 1999 finding of the circuit court of Cook County that they were not tortured emotionally when they were forced by their mother to hold down a fourth sibling, N.G., while their mother, respondent Leslie G., beat her into unconsciousness. The court order adjudicated the children wards of the court and appointed the Illinois Department of Children and Family Services as their guardian. We remand.

## BACKGROUND

L.G., who was born on January 10, 1988, was taken into custody on March 29, 1999. The State filed a petition for adjudication of wardship. It was alleged that L.G. was neglected based upon several occasions in which L.G.'s mother struck L.G.'s siblings with various objects causing cuts, welts, and bruises, and based upon the mother's threats to kill L.G.'s siblings. It was also alleged that L.G. was abused because her mother had struck L.G. with various objects, resulting in welts and in bruises on her back and face. It was also alleged that the facts supported findings that excessive corporal punishment was inflicted and that there was a substantial risk of physical injury to the minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function.

Similar petitions were filed for B.G., who was born on September 10, 1985, and for A.G., who was born on November 28, 1998.

The trial court ordered that the children be removed from the home and be placed into temporary custody.

The petitions were amended to add torture as a basis for finding abuse. It was alleged that on or about February 23, 1999, the mother forced A.G., L.G. and B.G. to restrain N.G. while she beat N.G. into unconsciousness. In addition, it was alleged that the mother had threatened her children with bodily harm on several occasions if they refused to restrain their siblings during beatings.

At trial, there was evidence that the mother forced the three children to hold down their older sister, N.G., while she was beaten to unconsciousness. N.G. was unconscious for more than an hour. According to a Catholic Charities supervisor who interviewed A.G. and L.G., L.G. stated that her mother said the other children would be beaten if they did not help her hold down a sister. A.G. gave a similar story, stating that she was fearful that the same thing would happen to her if she did not participate.

On September 21, 1999, the trial court found that the minors were abused or neglected on the bases of injurious environment, physical abuse, substantial risk/physical injury, and excessive corporal punishment. The findings were made that the children had been forced

to hold down siblings during beatings administered by the mother, that the children had emotional scars, and that only N.G. was physically tortured. The trial judge invited a court of review to provide guidance on the definition of "torture."

On November 23, 1999, a dispositional order was entered for A.G., granting custody to the Department of Children and Family Services with the right to place her. Dispositional orders for the other children do not appear in the record.

On December 22, 1999, the three minors filed a notice of appeal from the lack of a finding that they were also tortured.

## ANALYSIS

The issue on appeal is whether the term "torture" as used in the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(2) (West 1998)) includes conduct that involves solely the infliction of emotional harm.

Upon the court's order, the parties filed supplemental briefs addressing whether the appeal was moot because, whether or not the trial court erred in declining to make a finding of torture, the mother's parental rights were terminated on other grounds.

The mother argues that there is no further issue for this court to resolve because the children were to be adopted and there was no reason why a determination of torture was an appealable issue in view of the termination of parental rights order. The minors argue that adjudicatory findings are important because they are guideposts for provision of services to children and their families and because they are a significant factor in determining the permanency goals that will be entered.

An appeal becomes moot where the issues involved in the trial court no longer exist because events occur which render it impossible for the reviewing court to grant effective relief. *In re A.D.W.*, 278 Ill. App. 3d 476, 480, 663 N.E.2d 58 (1996).

We will not determine whether the issue is moot because, even if it is, the issue can be addressed under the exception for a question of great public interest. Criteria for application of that exception include: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will generally recur. *In re A Minor*, 127 Ill. 2d 247, 257, 537 N.E.2d 292 (1989); *People ex rel. Black v. Dukes*, 96 Ill. 2d 273, 277, 449 N.E.2d 856 (1983).

Certainly the torture issue is of a public nature, and the question may recur in other cases. Furthermore, resolution of the issue is desirable because there is no case law addressing whether torture includes conduct that involves solely emotional harm. Also, it is desir-

able that trial judges obtain guidance regarding the kind of torture that may be dealt with in juvenile proceedings.

Cases involving children who were before the court because of neglect or abuse have on occasion held that the public interest exception applied. *E.g., In re A.F.*, 234 Ill. App. 3d 1010, 1014, 602 N.E.2d 480 (1991) ("this [child neglect] case falls within the public interest exception to the mootness doctrine" because "[c]ertainly, the proper adjudication of what is in the best interests of minors is of surpassing public concern"); *In re Patricia S.*, 222 Ill. App. 3d 585, 589, 584 N.E.2d 270 (1991) (the issue whether the trial court deprived minors of their right to remain with their mother without complying with due process fell within the public interest exception to the mootness doctrine because "[a] matter of greater public concern is difficult to imagine").

■ The Act provides that a minor is abused if a parent commits one of the following behaviors:

"(i) inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function;

(iii) commits or allows to be committed any sex offense against such minor, as such sex offenses are defined in the Criminal Code of 1961, as amended, and extending those definitions of sex offenses to include minors under 18 years of age;

(iv) commits or allows to be committed an act or acts of torture upon such minor; or

(v) inflicts excessive corporal punishment." 705 ILCS 405/2—3(2) (West 1998).

The Act contains no definition of "torture."

■ The overriding objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Roser v. Anderson*, 222 Ill. App. 3d 1071, 1075, 584 N.E.2d 865 (1991). To ascertain the legislature's intent, we first look to the plain language of the statute. *Burnett v. Safeco Insurance Co. of Illinois*, 227 Ill. App. 3d 167, 173, 590 N.E.2d 1032 (1992). Language is to be given its ordinary and popularly understood meaning. *Roser*, 222 Ill. App. 3d at 1075. If the statutory language is clear and unambiguous, a court may not rely upon external aids to construction. *Mister v. A.R.K. Partnership*, 197 Ill. App. 3d 105, 113, 553 N.E.2d 1152 (1990). Where the statute is unclear or susceptible to more than one meaning, a court must

interpret the statute to clarify its application by looking to similar statutes as aids to construction. *Mister*, 197 Ill. App. 3d at 113. In addition to the language chosen by the legislature, the court should consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby. *Roser*, 222 Ill. App. 3d at 1075.

■ Dictionary entries for "torture" include definitions of "torture" as inflicting anguish of mind:

"—n. 1. the act of inflicting excruciating pain, esp. as a means of punishment or coercion. 2. a method of inflicting such pain. 3. often, tortures. The pain or suffering caused or undergone. 4. extreme *anguish of* body or *mind*; agony. 5. a cause of severe pain or anguish. —v.t. 6. to subject to torture. 7. to afflict with severe *pain of* body or *mind*. 8. to twist, force, or bring into some unnatural shape." (Emphasis added.) Random House College Dictionary Revised Edition 1387 (1988).

"1. a. The infliction of severe physical pain as a means of punishment or coercion. b. The experience of this. 2. *Mental anguish.* 3. Something causing pain or anguish. —*tr. v.* *** 1. To subject (a person or animal) to torture. 2. To afflict with great physical or *mental pain*. 3. To twist or turn abnormally; distort." (Emphasis added.) American Heritage Dictionary Second College Edition 1280 (1985).

While "torture" can mean infliction of physical pain, "torture" also can be the infliction of mental anguish. It is reasonable to conclude that the legislature would have recognized the duality of the term. The legislature would have modified the term "torture" with the adjective "physical" if it intended only one of the definitions of "torture" to be applicable.

Furthermore, looking at the statute as a whole, the inclusion of impairment of emotional health in subsections (i) and (ii) demonstrates that the intent was not to protect children solely from physical injury.

Respondent mother argues that in the Criminal Code of 1961 "torture" is defined as "the infliction of or subjection to extreme physical pain, motivated by an intent to increase or prolong the pain, suffering or agony of the victim." 720 ILCS 5/9—1(b)(14) (West 1998). However, that definition was limited to the context of torture as an aggravating factor in the determination of whether the death sentence was appropriate for defendants who were 18 years or older when they committed the crime of first-degree murder. Even if it were necessary to look at similar statutes, this criminal statute is not similar to the section of the Juvenile Court Act defining "abuse" and therefore it could not give guidance to the interpretation of "torture" in the latter statute.

We conclude that "torture" in section 2—3 of the Juvenile Court

Act includes conduct that involves solely the infliction of emotional harm, mental pain and suffering, mental anguish and agony.

From the record in this case, it appears that the trial judge did not consider that torture could include nonphysical torture. Therefore, it is necessary that the cause be remanded to the trial court for a finding of whether there was sufficient proof that the three minors were subjected to mental torture as an additional basis for finding abuse.

The cause is remanded with directions to the trial court to enter a finding regarding whether there was mental torture of the three minors.

Reversed and remanded with directions.

HALL, P.J., and BURKE, J., concur.