THE STATE, EX REL. DUNBAR ET AL., APPELLANTS, *v.* HAM, JUDGE, COMMON PLEAS COURT, ET AL., APPELLEES.

[Cite as State, ex rel. Dunbar, v. Ham (1976),
45 Ohio St. 2d 112.]

(No. 75-310—Decided February 11, 1976.)

*Messrs. Ritter, Boesel, Robinson & Marsh* and *Mr. Ellis F. Robinson, Mr. Harold C. Moan, Mr. Thomas J. Manahan* and *Mr. Robert G. Clayton,* for appellants.

*Mr. Richard B. McQuade, Jr.,* prosecuting attorney, for appellees.

O'NEILL, C. J. The issue to be determined in this appeal is whether, under the provisions of Civ. R. 3(C) (4), a trial court, upon its own motion and without conducting a hearing, may order a change of venue to another county.

Civ. R. 3(C) (4) reads:

"Upon motion of any party or upon its own motion the court may transfer any action to an adjoining county within this state when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending."

Prior to the adoption of the Rules of Civil Proceedure, R. C. 2311.38 provided for change of venue. That section read:

"When it appears to the court that a fair and impartial trial cannot be had in the county where the suit is pending, the court may change the place of trial to some adjoining county."

The test for determining whether a transfer should be ordered, expressed in both former R. C. 2311.38, and in Civ. R. 3(C) (4), is the same, i. e., transfer can be ordered when it appears that "a fair and impartial trial cannot be had in the county where the suit is pending." The rule, however, unlike the statute, expressly allows the court to transfer a case "upon its own motion."

The phrase "upon its own motion" is identical in import to the expression "*sua sponte*," which means "[o]f his or its own will or motion; voluntarily; without prompting or suggestion." Black's Law Dictionary (4th ed.), 1592. Inasmuch as the words of the rule "upon its own motion" are unambiguous, "the assistance of rules of construction is not required" (*Sudia v. Dietrich* [1966], 6 Ohio St. 2d 160, 162, 216 N. E. 2d 882) to interpret them. Thus, Civ. R. 3(C) (4) empowers a trial court to order a change of venue voluntarily.

By authorizing a trial court to voluntarily order a change of venue, the rule allows transfers to be made without consultation with counsel and without conducting a hearing. The rule thus rests discretion in the trial court to itself determine whether a change of venue should be ordered. The rule does not require a hearing, but neither does it prohibit a trial court from "on its own motion"

conducting a hearing to determine whether "* * * it appears that a fair and impartial trial cannot be had in the county in which the suit is pending." In effect, the rule permits a trial court to take cognizance of facts within the knowledge of the court which warrant a change of venue.

Appellants argue that to interpret Civ. R. 3(C) (4) to permit a trial court to change the venue of a civil action "without affording the parties a hearing, without taking or considering any evidence," abridges their right of due process of law. *Swindell-Dressler Corp.* v. *Dumbauld* (C. A. 3, 1962), 308 F. 2d 267, is cited. In that case the court held, at page 273, that a transfer of venue ordered by a district court without "notice, hearing or opportunity to be heard" constituted a denial of procedural due process. The applicable statute in *Swindell-Dressler* was Section 1404(a), Title 28, U. S. Code, which reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The foregoing federal statute, like former R. C. 2311.-38, contains no provision for transfer by the court on its own motion as does Civ. R. 3(C) (4). Thus, *Swindell-Dressler Corp.* v. *Dumbauld* is distinguishable.

The question remains whether the provisions of Civ. R. 3(C) (4), permitting transfer by the court on its own motion without hearing, constitute denial of due process.

Venue, of course, is to be distinguished from jurisdiction. "Jurisdiction connotes the power to hear and decide a case on its merits, while venue connotes locality, the place where the suit should be heard." *New York, Chicago & St. Louis Rd. Co.* v. *Matzinger* (1940), 136 Ohio St. 271, 276, 25 N. E. 2d 349; *Morrison* v. *Steiner* (1972), 32 Ohio St. 2d 86, 290 N. E. 2d 841, paragraph one of the syllabus.

The transfer of the cause from Fulton County to Lucas County changes only the place of trial. The transfer does not deprive appellants of their right to a "* * * fair trial in a court of competent jurisdiction * * *." *Allen* v. *Smith* (1911), 84 Ohio St. 283, 291, 95 N. E. 829. Further,

there is no showing that the transfer will prejudice the right of appellants to a fair trial. The petition for writ of prohibition filed by appellants in the Court of Appeals makes no such assertion. Therefore, appellants' contention that the transfer to Lucas County, of itself, without hearing, is a denial of due process is unconvincing.

It is the conclusion of this court that under the provisions of Civ. R. 3(C) (4) a trial court, upon its own motion and without conducting a hearing, may transfer an action to an adjoining county "when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending."

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN, and P. BROWN, JJ., concur.

HERBERT, J., concurring. There is raised in this cause an issue which is coming before the court with increasing frequency, i. e., will a writ of prohibition issue to prevent a court from denying the relator "due process of law?" In all but the unusual case, that query should be answered in the negative.

There are undoubtedly some violations of some rights which rise to a level of constitutional insult sufficient to deprive a court of jurisdiction to act. However, the survival of order in our administration of justice requires that such cases be few and far between.

This court and Courts of Appeals are entrusted with a constitutional grant of power to issue writs of prohibition. Flowing with that markedly important authority is a concomitant responsibility to recognize that lower courts must remain free to adjudicate; by the very nature of our system, the freedom to adjudicate necessarily includes the freedom to err.

The watchword in prohibition cases is "jurisdiction," and jurisdiction is made of hardy stuff.