THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REYMAR CLINIC PHARMACY, INC., Defendant-Appellant.

First District (5th Division)  Nos. 1—91—1153, 1—91—2181 cons.

Opinion filed March 26, 1993.

Patinkin & Torf, Ltd., of Deerfield (Phillip R. Torf, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Terence Madsen and Bradley Halloran, Assistant Attorneys General, of Chicago, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

The corporate defendants, Reymar Clinic Pharmacy (hereinafter Reymar), and Englewood Clinic Laboratory, Inc. (hereinafter Englewood), along with two individuals, Henry Piemental, M.D. (hereinafter H.P.), and Oscar Hosenilla, were indicted in several counts, including count I charging vendor fraud, which is the only count pertaining to this appeal. The indictment alleged that defendants defrauded the Illinois Department of Public Aid in obtaining more than $10,000 in payments for medical services which it never ordered or delivered.

On May 11, 1990, defendants H.P., Englewood and Reymar were found guilty on the charges of vendor fraud pursuant to a guilty plea purportedly entered by H.P. on his behalf and on behalf of the corporate defendants. Each received a sentence of conditional discharge for a period of 24 months.

Englewood and Reymar each filed post-conviction petitions pursuant to section 122—1 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1), which were summarily denied by the trial court. Each defendant also filed petitions to vacate the judgment pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401), which were also summarily denied without an evidentiary hearing.

Each corporate defendant filed a notice of appeal and both appeals were consolidated before this court. Subsequently, appellant Reymar's appeal was stricken, leaving Englewood as the sole remaining appellant. Although filed separately and at different times, the grounds alleged in the respective post-conviction petitions and motions to vacate filed by Reymar and by Englewood are substantially identical. Although the court ruled on Reymar's post-conviction pleadings first, the trial court assigned the same reasons for the denial of the petitions in Englewood as it had articulated previously with respect to Reymar.

In its post-conviction petition, Englewood avers that H.P., who purported to represent it in entering a plea of guilty on its behalf, was unauthorized to do so. Englewood's post-conviction petition avers that H.P. was neither a shareholder, director nor officer of Englewood. It further states that H.P. made false representations as to his authority to enter a plea for Englewood. The petition contends that neither Englewood nor its officers, true agents or directors ever received notice of its "alleged violations."

The petition states that as a result of the conviction, Englewood's eligibility to remain a vendor of laboratory services to public aid recipients was being terminated and its principals (officers and shareholders) would be barred from participating in the State's medical assistance program.

Englewood's petition urges that its rights under the fourteenth amendment of the United States Constitution and article I, section 2, of the Constitution of the State of Illinois were violated by the lack of notice of the charges and the fraudulent testimony of H.P.

Supporting affidavits were filed under oath by Dr. Suck Oo Kim, president, director and 50% shareholder of Englewood, and by Dr. Lamberto Piemental, secretary-treasurer and owner of the other 50% of Englewood's stock. Dr. Lamberto Piemental is H.P.'s brother.

The section 2—1401 petition of Englewood contained allegations substantially identical to those in its post-conviction petition and was apparently filed contemporaneously. The section 2—1401 petition explicitly avers that Englewood did not discover that it was convicted until it was notified of the conviction by the Illinois Department of Public Aid, more than six months later, in November 1990.

The same sworn affidavits submitted by Englewood in support of its post-conviction petition were also submitted in support of its section 2—1401 petition.

As noted, the trial court adopted its reasons for denying the petitions of Reymar as its reasons for denying the petitions of Engle-

wood. The trial court held that the post-conviction remedy provided under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) was not available to corporations. The trial court reasoned that since corporations could not be imprisoned, they were not the intended beneficiaries of the relief provided under that statute.

The reasons assigned by the trial court for the denial of Englewood's section 2—1401 petition are less clear. Although the trial judge stated that his grounds for denying Englewood's section 2—1401 petition were the same as those which controlled his dismissal of the Reymar petition, there were distinct differences between the two petitions. In Reymar, affidavits submitted in support of the section 2—1401 petition were unsigned, while those submitted by Englewood were signed and sworn to. In Reymar, the face of the "Domestic Corporation Annual Reports" filed with the Secretary of State showed that H.P. was an officer of that corporation while the "Domestic Corporation Annual Reports" filed by Englewood showed that Drs. Suck Oo Kim and Lamberto Piemental were its only officers and fiduciaries.

Unlike his statement regarding the post-judgment petition, the trial judge did not pinpoint the reasons for denying Reymar's section 2—1401 petition. He did state that for purposes of section 2—1401 the claim regarding H.P.'s fraud or lack of authority was collateral and tenuous "at best." He also stated that he saw nothing in the record "that shows Henry Piemental committed or perpetuated any fraud upon this court" in entering his plea for Reymar. He concluded "in the absence of any direct affirmative showing" of Henry Piemental's lack of authority, the petition "must fail."

We shall first address the question raised by Englewood's post-conviction petition.

The Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1) provides in pertinent part:

> "Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article."

■ Although the explicit language of this provision requires that the petitioner be imprisoned in the penitentiary in order to institute a post-conviction proceeding, our supreme court in construing this provision has deemphasized the necessity of actual imprisonment. Thus, our courts have allowed post-conviction petitions from defendants sen-

tenced to probation (*People v. Montes* (1980), 90 Ill. App. 3d 355, 412 N.E.2d 1363), as well as from defendants who were on mandatory supervised release. *People v. Correa* (1985), 108 Ill. 2d 541, 485 N.E.2d 307.

In *People v. Martin-Trigona* (1986), 111 Ill. 2d 295, 489 N.E.2d 1356, a post-conviction petition from a defendant who was released on bond when the petition was filed was allowed. In *People v. Placek* (1976), 43 Ill. App. 3d 818, 357 N.E.2d 660, cited with approval by our supreme court in *People v. Martin-Trigona*, a post-conviction petition from a defendant on parole and in a work release program was considered on its merits.

While in each of these cases no actual imprisonment was required for the petition to be available, in each the possibility of custodial incarceration was present at least as of the time that the petition was filed. This was perceived by our supreme court to be the controlling factor. See *People v. Martin-Trigona* (111 Ill. 2d at 300):

"As with actual incarceration, restraints on liberty accompanying probation, parole and release on appeal bond are unacceptable when they are imposed in violation of an individual's State or Federal constitutional rights. Recognition of this principle undergirds the decisions in *Correa, Montes*, and *Placek*, and it is controlling in this case. Release on an appeal bond carries seriously restrictive conditions [citation], and it was uncontested in this case that Martin-Trigona, being subject to an appeal bond, could not leave the confines of the State without permission of the court, could not depart the country under any circumstances, and was restricted in his ability to change his place of residence within the State.

In *Correa*, we allowed convicted persons on mandatory supervised release to petition under the Act because 'the released prisoner may be taken into custody for a violation of the conditions of his release.' [Citation.] The same may be said for convicted persons released on appeal bond ***. We therefore hold that defendants who avoid incarceration by posting an appeal bond are 'imprisoned in the penitentiary' within the meaning of the Act."

It is a truism that the potential risk of imprisonment is totally lacking in the case of a corporation. (See *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 418, 375 N.E.2d 1297 ("[corporations], in the nature of things, could not be imprisoned").) Thus, since the potential of custodial confinement is lacking, the post-conviction statute cannot apply. We cannot superimpose upon the post-conviction statute

a construction which would totally abolish and ignore the requirement that it apply to "a person imprisoned in the penitentiary."

That this conviction may nonetheless result in damage to the commercial enterprises of the corporation would not be sufficient under the Act to provide a basis for its invocation. See *People v. Martin-Trigona*, 111 Ill. 2d 295, 489 N.E.2d 1356; *People v. Davis* (1973), 54 Ill. 2d 494, 298 N.E.2d 161.

■ We next consider defendant's contention of trial court error in summarily denying its section 2—1401 petition. The procedural requirements attendant to section 2—1401 petitions have been extensively reviewed by our supreme court in *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253. There our supreme court held among other things that (1) a petition under section 2—1401 is a pleading in a new action; (2) it is subject to the procedural safeguards provided in the Code of Civil Procedure with respect to pleadings; and (3) a motion to dismiss it will admit all facts as well pleaded and should not be granted unless it clearly appears that no set of facts could ever be proved as to entitle petitioner to prevail. See also *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348; *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.

Moreover, under *Ostendorf*, the rule is clear that where the central facts of a section 2—1401 petition are controverted, an evidentiary hearing must be held. (Accord *Mercantile All-In-One Loans, Inc. v. Menna* (1978), 63 Ill. App. 3d 931, 380 N.E.2d 944.) The Illinois Supreme Court in *Ostendorf* declared:

> "We believe that this rule is sound. In a section 72 proceeding, as in a proceeding on a summary judgment motion, factual disputes may arise that cannot be resolved solely on the basis of pleadings, affidavits, and the record of the prior proceeding. Where there is a genuine dispute as to an issue of fact, that issue must be determined by the trier of fact." *Ostendorf*, 89 Ill. 2d at 286.

Here the central facts are at issue. The representation of H.P. to the trial court that he had authority to speak on behalf of Englewood has been directly challenged by the affidavits of his brother, Lamberto, and of Dr. Kim, and by the extrinsic submission of the "Domestic Corporation Annual Report" of Englewood showing the affiants to be Englewood's only officers and agents.

Accordingly, the summary disposition of defendant's petition by the trial court was clearly outside the latitude of his discretion. While the petition does not allege due diligence on its face, it has not been

challenged on that ground either below or in this appeal. Nor was that omission referred to or alluded to by the trial judge.

■ Defendant also contends that the trial court lacked *in personam* jurisdiction over it to enter a conviction predicated upon the entry of an unauthorized guilty plea. Under section 107—13 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 107—13), jurisdiction over a corporation charged with an offense is acquired through service of summons. The record on appeal in this case is devoid of any reference to service of summons. However, the State in its oral argument has conceded that if defendant's assertions regarding the lack of agency and authority of H.P. to enter a guilty plea on its behalf were correct, the trial court would be without jurisdiction and its judgment would be void.

Where a void judgment is attacked, no special appearance need be filed once the judgment is entered. (See *DiNardo v. Lamela* (1989), 183 Ill. App. 3d 1098, 539 N.E.2d 1306.) Moreover, if the movant mislabels his motion attacking the judgment, the courts should be liberal in recognizing the motion as a collateral attack upon a void judgment. (See *DiNardo v. Lamela*, 183 Ill. App. 3d 1098, 539 N.E.2d 1306; *Giralamo v. O'Connell* (1986), 145 Ill. App. 3d 527, 495 N.E.2d 1180.) Consequently, as in *DiNardo*, we are free to recognize defendant's section 2—1401 petition as also presenting a collateral attack on a void judgment even though not designated as such.

The differences between a section 2—1401 motion and a motion attacking a void judgment are largely procedural in that an attack on a void judgment is not subject to the time constraints of a section 2—1401 motion, nor is it subject to any due diligence requirements. (See generally *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360.) However, since this petition is filed within the two-year period provided under section 2—1401 and the State has not challenged defendant's requisite diligence, these procedural differences are inconsequential. Moreover, whether we view defendant's motion as a section 2—1401 motion or as a motion attacking a void judgment, the central issue of fact is identical. In either case, the question turns upon whether H.P. was authorized by Englewood to enter a guilty plea on its behalf. As previously noted this dispositive fact question is in dispute. It must therefore be determined by an evidentiary hearing which the trial court failed to provide. See *Ostendorf*, 89 Ill. 2d 273, 433 N.E.2d 253; *DiNardo*, 183 Ill. App. 3d 1098, 539 N.E.2d 1306.

Accordingly, the order of the trial court summarily denying defendant's post-conviction petition under section 122—1 (Ill. Rev.

Stat. 1989, ch. 38, par. 122—1) is affirmed. The order of the trial court denying defendant's petition pursuant to section 2—1401 is reversed and remanded with instructions to conduct an evidentiary hearing.

Affirmed in part; reversed in part and remanded.

MURRAY and COUSINS, JJ., concur.