THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLIFFORD ANDERSON, Defendant-Appellant.

First District (1st Division)   No. 1—03—1615

Opinion filed September 27, 2004.

Michael J. Pelletier and Michael H. Orenstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the judgment of the court and the following opinion:

Petitioner, Clifford Anderson, appeals the summary dismissal of his "Motion to Vacate Unconstitutional and Void Judgments," which he characterizes as a motion for relief under section 2—1401 of the Code of Civil Procedure (hereinafter Code). 735 ILCS 5/2—1401 (West 2002). Petitioner contends that the circuit court did not have authority to summarily dismiss this kind of pleading.[1]

## I. BACKGROUND

After three trials, petitioner was convicted of the murder of two of

---

[1]For purposes of clarity, when we refer to "summary dismissal" or "summary proceedings" we mean the disposal of cases or pleadings by courts on their own motion, without notice of the proposed disposal to affected parties, and with no opportunity for those parties to argue against that disposal. We

his coworkers. Petitioner was found eligible for the death penalty, but received a prison sentence of natural life.[2] Petitioner exhausted his direct appeals on October 14, 1994. He later filed a postconviction petition which was summarily dismissed, and we affirmed the dismissal. *People v. Anderson*, No. 1—91—0470 (1994) (unpublished order pursuant to Supreme Court Rule 23). Subsequently, he filed a petition for state *habeas corpus* in the circuit court of Will County alleging that his sentence violated the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The Will County court denied the petition and the Third District Appellate Court affirmed its determination. *Anderson v. Snyder*, No. 3—01—0836 (2002) (unpublished order pursuant to Supreme Court Rule 23). Petitioner then, on February 5, 2003, 12 years after his conviction, filed the instant "Motion to Vacate Unconstitutional and Void Judgments," which referenced section 2—1401 of the Code, in the circuit court of Cook County. In this motion, defendant claimed that the judgment against him was void. The basis for this contention was the same as that in his petition for *habeas corpus*: that his sentence violated *Apprendi*. Defendant claimed that he received a sentence of natural life because the court found that he committed the murders in a "brutal and heinous" manner, though the State never charged him with such conduct and such allegation was never put to proof beyond a reasonable doubt before a jury.

The circuit court denied petitioner's motion *sua sponte*, without notifying petitioner that it was considering dismissing the motion or allowing him the opportunity to argue against dismissal. In its written order, the circuit court explained that it found the motion to be untimely and barred by principles of *res judicata* and waiver. The circuit court emphasized that petitioner's only means of avoiding the two-year limitations period for section 2—1401 petitions, when he did not allege legal disability, duress, or fraudulent concealment, was to demonstrate that the judgment against him was void. The circuit court correctly observed, however, that our supreme court has held

---

do not intend to mean other methods of pretrial resolution, such as summary judgment under Code section 2—1005, unless those procedures are also carried out *sua sponte* and without notice and the opportunity to be heard.

[2]Defendant's first trial resulted in a hung jury. His conviction from his second trial was reversed by the Illinois Supreme Court in *People v. Anderson*, 113 Ill. 2d 1, 495 N.E.2d 485 (1986). The details of the offense, which are unimportant for purposes of this appeal, are presented in detail in the unpublished version of our order deciding defendant's direct appeal from his third trial. *People v. Anderson*, No. 1—89—1199 (1994) (unpublished order under Supreme Court Rule 23).

the imposition of an extended-term sentence, after a defendant has been found death eligible, does not violate *Apprendi*. *People v. Ford*, 198 Ill. 2d 68, 761 N.E.2d 735 (2001). The court concluded, therefore, that defendant's judgment was not void, making his motion untimely. The court further noted that petitioner's *Apprendi* arguments were previously presented in his petition for *habeas corpus* and were therefore barred by *res judicata*. To support its *res judicata* and waiver analysis, the court cited to supreme court precedent addressing petitions under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 2002)) (Act). On the same day it filed its written order, the circuit court made a recorded statement that petitioner's "*pro se* petition for relief from judgment \*\*\* fail[ed] to state any grounds for relief" because defendant erroneously concluded that his sentence was based on brutal and heinous conduct when, in fact, the sentence was based on the commission of multiple killings.

On appeal, petitioner argues that the circuit court recognized his motion as a section 2—1401 petition, but then committed reversible error when it employed a form of procedure, summary dismissal, not recognized under the Code to dispose of it. Petitioner relies on the Second District case of *People v. Pearson*, 345 Ill. App. 3d 191, 802 N.E.2d 386 (2003), to support his position. The State, on the other hand, argues that the circuit court recharacterized petitioner's motion as a petition under the Act ("postconviction petition"), and summarily dismissed it as authorized by the Act. The State contends that this recharacterization was proper, and in fact required, under our supreme court's precedents. Finally, the State suggests that were any procedural error to have occurred, it would have been harmless because petitioner's claim is substantively without merit. We affirm as only harmless error occurred below.

## II. ANALYSIS

Initially, we observe that, contrary to the State's contention, there is no question that the circuit court decided to treat petitioner's motion for what it purported to be on its face, namely, a section 2—1401 petition. The State draws to our attention to a brief comment of the court, shortly after its receipt of the motion, that "[i]t is a postconviction petition." However, in both the subsequent written order and in comments made immediately prior to the issuance of the written order, the circuit court identified the motion as coming under section 2—1401. Plus, in the written order, the circuit court carefully evaluated the motion under the standards applicable to section 2—1401 petitions, even though it cited to precedents evaluating waiver and *res judicata* under the Act. Further, we detect no error by the

circuit court treating the motion as a section 2—1401 petition. Two courts, with which we agree, have concluded that circuit courts have discretion as to whether they will recharacterize petitions for collateral relief to fall under the Act. *People v. Helgesen*, 347 Ill. App. 3d 672, 807 N.E.2d 718 (2004); *People v. Knox*, 336 Ill. App. 3d 275, 783 N.E.2d 222 (2003). In 1997, the legislature added subsection (d) to section 122—1 of the Act. That subsection provides:

> "A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article." 725 ILCS 5/122—1(d) (West 2002).

Interpreting that section, the *Helgesen* court explained in a case where the circuit court recharacterized a "Motion to Vacate Void Judgment," which addressed identical *Apprendi* claims as the case at bar, "If the court *need not* do so, then, by the strongest of implications, it also *may* do so. Thus, the trial court did not err in construing defendant's motion as a petition under the Act." (Emphasis in original.) *Helgesen*, 347 Ill. App. 3d at 676, 807 N.E.2d at 722.

The State argues that *People v. Pinkonsly*, 207 Ill. 2d 555, 802 N.E.2d 236 (2003), and *People ex rel. Palmer v. Twomey*, 53 Ill. 2d 479, 292 N.E.2d 379 (1973), actually require that petitioner's motion be treated as a postconviction petition because the motion presented a constitutional, as opposed to a fact-based, claim. The State highlights that the *Pinkonsly* court cited to the Fourth District's opinion in *People v. Gandy*, which said where "the section 2—1401 petition is prepared *pro se* and alleges a deprivation of constitutional rights cognizable under the Post-Conviction Hearing Act, the trial court is to treat it as such." *People v. Gandy*, 227 Ill. App. 3d 112, 139, 591 N.E.2d 45, 64 (1992). We, however, disagree.

The *Pinkonsly* petitioner filed a "petition to reduce sentence," referring to section 2—1401, which alleged that he received ineffective assistance of counsel regarding his sentence from all of his past attorneys, including his trial, appellate, and previous section 2—1401 counsel. The *Pinkonsly* court evaluated whether such a claim was appropriate under section 2—1401 and, as the State contends, cited to *Gandy* when noting that the petitioner was not seeking recharacterization of his petition. However, the *Pinkonsly* court then observed that any such recharacterization would have been inappropriate, in part because the petition was "clearly brought under section 2—1401."

*Pinkonsly*, 207 Ill. 2d at 566, 802 N.E.2d at 244. We do not see *Pinkonsly*'s single citation to *Gandy* as the adoption of its holding when the *Pinkonsly* court subsequently declined to apply that holding in the case before it. Therefore, *Pinkonsly* does not mandate the recharacterization of petitioner's pleading as a postconviction petition.

We likewise find *Palmer* unavailing to the State. *Palmer* openly encouraged recharacterization of *pro se* petitions, however labeled, to postconviction petitions when those petitions presented constitutional claims cognizable under the Act. *Palmer*, 53 Ill. 2d at 484, 292 N.E.2d at 382. However, the *Palmer* court specifically stated that this approach was to benefit defendants who might otherwise, based on their lack of legal skill, seek relief through a procedure which could not grant relief. *Palmer*, 53 Ill. 2d at 484, 292 N.E.2d at 382. As the State points out in arguing the lack of substantive merit in petitioner's motion, *Apprendi* does not apply retroactively to cases like petitioner's, where direct appeals were exhausted prior to the Supreme Court's decision. *People v. De La Paz*, 204 Ill. 2d 426, 791 N.E.2d 489 (2003). Thus, *requiring* recharacterization of petitioner's pleading under section 2—1401 as a postconviction petition, a transformation that would doom defendant's petition to summary dismissal, would go against the underlying rationale of *Palmer*. See *Pearson*, 345 Ill. App. 3d at 198, 802 N.E.2d at 392 ("we do not think that the court intended *Palmer* to authorize recharacterization when it leads only to summary dismissal"). In fact, the opposite result would seem to flow from *Palmer*, that a petition which would automatically fail under the Act should be recharacterized as a section 2—1401 petition. Indeed, that is exactly what the court did in *People v. Harper*, when it found that the defendant presented a statutory, as opposed to a constitutional, claim, which was not cognizable under the Act. *People v. Harper*, 345 Ill. App. 3d 276, 284, 802 N.E.2d 362, 369 (2003); see also *People v. Brown*, 169 Ill. 2d 94, 109, 660 N.E.2d 964, 971 (1995) (Harrison, J., dissenting, joined by McMorrow and Nickels, JJ.) (suggesting that a postconviction petition containing a noncognizable claim under the Act should have been recharacterized as a section 2—1401 petition under *Gandy*).

■ Having determined that the circuit court properly reviewed petitioner's motion as a petition for relief from judgment under section 2—1401, we must finally resolve whether the circuit court had the authority to summarily dismiss such a petition. We conclude the circuit court did not have such power and therefore applied an improper procedure. However, we recognize that there is a split of authority on this subject within the appellate court.

The Fourth District first extended the summary dismissal procedure beyond the Act into other procedures that collaterally chal-

lenge convictions in *Mason v. Snyder*, 332 Ill. App. 3d 834, 774 N.E.2d 457 (2002). Stressing the need to check a rising tide of nonmeritorious prisoner litigation, the *Mason* court held that, by their inherent authority to protect their dockets from vexatious and frivolous pleadings, the circuit courts could summarily dismiss inmates' *mandamus* petitions. *Mason*, 332 Ill. App. 3d at 842, 774 N.E.2d at 463-64. In support of this position, the *Mason* court cited to precedent from this district where we had approved of circuit courts' *sua sponte* dismissals of civil complaints that failed to state valid claims. The *Mason* dissent, however, argued that the introduction of the summary dismissal procedure into *mandamus* proceedings was a decision for the legislature, not for the courts. *Mason*, 332 Ill. App. 3d at 845, 774 N.E.2d at 466 (Cook, J., dissenting).

Roughly four months after *Mason*, the Second District, in *People v. Gaines*, 335 Ill. App. 3d 292, 780 N.E.2d 822 (2002), held that the circuit courts did not have authority to summarily dismiss section 2—1401 petitions. The *Gaines* court emphasized that the Act and section 2—1401 were "separate and distinct remedial provisions," and while summary dismissal might be available under the Act, section 2—1401 petitions were akin to a complaint in a civil action, which "the opponent must either move to dismiss *** or *** answer." *Gaines*, 335 Ill. App. 3d at 295-96, 780 N.E.2d at 825. The *Gaines* court described the summary dismissal proceedings in the circuit court as "seriously flawed" because the defendant received neither adequate notice nor the opportunity to respond to the proposed dismissal of his petition. *Gaines*, 335 Ill. App. 3d at 296, 780 N.E.2d at 825.

The Second District then relied on *Gaines* to conclude that summary dismissal was an invalid procedure in *mandamus* proceedings in *People v. Shellstrom*, 345 Ill. App. 3d 175, 802 N.E.2d 381 (2003). The *Shellstrom* court emphasized that comprehensive procedures addressing *mandamus* petitions already existed in the Code, and concluded that the circuit court committed reversible error when it used a procedure from outside the Code. *Shellstrom*, 345 Ill. App. 3d at 177, 802 N.E.2d at 384. The *Shellstrom* court also rebuffed the State's argument that any procedural error was harmless because the *mandamus* complaint lacked merit, stating "a trial court's failure to give a nonmovant notice and an opportunity to respond to a dispositive motion is inherently prejudicial." *Shellstrom*, 345 Ill. App. 3d at 179, 802 N.E.2d at 385.

On the same day it decided *Shellstrom*, the Second District reaffirmed its holding in *Gaines* in *Pearson. People v. Pearson*, 345 Ill. App. 3d 191, 802 N.E.2d 386 (2003). The *Pearson* court observed that the

"process of judicial review of a petition under the Act—without comment by either party—is a significant and unusual departure from the adversary process. The legislature has mandated that departure in the specific context of the Act. We see no possible basis for importing such an unusual procedure into matters governed by the Code of Civil Procedure." *Pearson*, 345 Ill. App. 3d at 194, 802 N.E.2d at 389.

The *Pearson* court again rejected the State's request to conduct a harmless error analysis of the summary dismissal of a section 2—1401 petition, explaining:

"[W]e can conduct harmless-error analysis only by examining fundamentally proper proceedings and considering whether, if we removed the effect of an error, we would obtain the same result. Where the error is that the proceedings were of fundamentally the wrong kind, we cannot speculatively recreate the right proceedings to determine what should have been the result. A section 2—1401 petition invokes an adversarial proceeding brought under the Code. Despite the predictability of the ultimate dismissal of this petition, we think that the procedure by which the trial court dismissed it was simply too far removed from what defendant was entitled to for us to review the matter as if defendant had been given notice and an opportunity to answer." *Pearson*, 345 Ill. App. 3d at 196, 802 N.E.2d at 390.

See also *People v. Winfrey*, 347 Ill. App. 3d 987, 808 N.E.2d 589 (2004) (extending the holdings of *Gaines, Shellstrom*, and *Pearson* to state *habeas corpus* proceedings)

The Fourth District was unpersuaded by the Second District's cases, however, expanding its holding in *Mason* to section 2—1401 petitions in *People v. Bramlett*, 347 Ill. App. 3d 468, 806 N.E.2d 1251 (2004). The *Bramlett* court explained that it could not be unfair to dismiss defendants' petitions without notice and an opportunity to be heard because our supreme court had determined that summary dismissal of postconviction petitions did not violate due process. *Bramlett*, 347 Ill. App. 3d at 473, 806 N.E.2d at 1255.[3]

While there are arguments to be made in support of both posi-

---

[3]Most recently, in *Owens v. Snyder*, 349 Ill. App. 3d 35, 811 N.E.2d 738 (2004), a division of this district approved the summary dismissal of a *mandamus* petition. The *Owens* petitioner complained that the circuit court failed to serve the defendant as required by the provisions of the Code governing *mandamus*. The *Owens* court observed that the purpose of the service provision in the Code was "to protect a defendant from adverse judgment absent notice or the opportunity to defend," not to protect petitioners. *Owens*, 349 Ill. App. 3d at 43, 811 N.E.2d at 745. Consequently, the *Owens* court held that

tions, we are persuaded by the holdings of the Second District prohibiting the use of the summary dismissal procedure outside of the Act for three reasons.

First, we concur with *Shellstrom* and *Pearson* that it is unfair for a litigant to be deprived of notice of the proposed dismissal of his action and an opportunity to respond, whether the dismissal is initiated by another litigant or a court. Notice of impending judicial action and the opportunity to be heard prior to that action are fundamental principles of justice. See generally *Peterson v. Randhava*, 313 Ill. App. 3d 1, 12, 729 N.E.2d 75, 83 (2000), quoting *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993) (notice and opportunity to respond to a dispositive motion are " 'deeply imbedded in our concept of fair play and justice' "); *Skarpinski v. Veterans of Foreign Wars*, 343 Ill. App. 271, 274, 98 N.E.2d 858, 859 (1951) ("[i]n the most primitive concepts of justice, one of the fundamental requisites for the exercise of judicial authority over the person or property of another is notice"). Thus, in *Peterson*, noting the unfairness to the affected litigant by the procedure employed, this court reversed a circuit court when it *sua sponte* proposed and granted summary judgment without allowing the opponent an adequate opportunity to respond. *Peterson*, 313 Ill. App. 3d at 11-14, 729 N.E.2d at 83-85. Likewise, in *LaRabida Children's Hospital & Research Center v. Harrison*, 263 Ill. App. 3d 790, 635 N.E.2d 575 (1994), we reversed the summary grant of a section 2—1401 petition when the opponent did not receive the opportunity to contest the facts or merits of the case, even though the petitioner claimed there were no material facts in dispute. Finally, we also recently reversed the summary dismissal of a business's complaint based on its failure to file a security for costs in *Lease Partners Corp. v. R&J Pharmacies, Inc.*, 329 Ill. App. 3d 69, 768 N.E.2d 54 (2002).

We emphasize that our holding that notice and opportunity to be heard prior to dismissal are mandatory would not infringe on the circuit court's inherent authority to *sua sponte* dismiss pleadings that fail to state valid claims, the power that *Mason* and its progeny sought to draw upon. Unfortunately, those cases that have extrapolated this inherent authority in the circuit court to extend the summary

---

it was not for the petitioner to challenge the dismissal for lack of service on the defendant in whose favor the matter was decided by the court. *Owens*, 349 Ill. App. 3d at 43-45, 811 N.E.2d at 746. More important for the issues presented in this appeal, however, the *Owens* court, though not explicit on the subject, appeared to favor the decisions of the Fourth District approving the summary dismissal of petitions based on the circuit courts' inherent authority to control their dockets. *Owens*, 349 Ill. App. 3d at 43-45, 811 N.E.2d at 745-47.

procedures available under the Post-Conviction Hearing Act to other forms of postconviction relief have mistaken *"sua sponte* dismissal" to mean "summary dismissal." The two terms are not equivalent. The majority of courts recognize that *sua sponte* action means only that the court initiates a motion, which then follows the otherwise applicable procedures, including notice of the proposed judicial action and the opportunity to argue against such action, as required in fairness to the litigants. See *Stern v. Superior Court*, 105 Cal. App. 4th 223, 231-32, 129 Cal. Rptr. 2d 275, 281 (2003) (involving the *sua sponte* reclassification/reassignment of a case within the local court system); *Tidwell v. Tidwell*, 251 Ga. App. 863, 864, 554 S.E.2d 822, 823 (2001) (*sua sponte* entry of summary judgment); *Huminski v. LaVoie*, 173 Vt. 517, 519-20, 787 A.2d 489, 492-93 (2001) (*sua sponte* dismissal of complaint); *Government Employees Insurance Co. v. Burns*, 672 So. 2d 834 (Fla. App. 1996) (*sua sponte* transfer of case based on *forum non conveniens*); *King v. Mosher*, 137 N.H. 453, 456-57, 629 A.2d 788, 790-91 (1993) (*sua sponte* dismissal of complaint); *Osborn v. Emporium Videos*, 848 P.2d 237 (Wyo. 1993) (*sua sponte* dismissal of complaint); *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 83-84, 847 P.2d 731, 735-36 (1993) (*sua sponte* entry of summary judgment); *People v. Dolan*, 585 N.Y.S.2d 549, 184 A.D.2d 892 (1992) (*sua sponte* dismissal of indictment); *Rubins v. Plummer*, 813 P.2d 778, 779-80 (Colo. App. 1991) (*sua sponte* dismissal of complaint); *State v. Langdon*, 117 Idaho 115, 785 P.2d 679 (1990) (*sua sponte* dismissal of appeal); *Around the World Importing, Inc. v. Mercantile Trust Co. National Ass'n*, 771 S.W.2d 919, 921 (Mo. App. 1989) (*sua sponte* dismissal of complaint); *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987) (*sua sponte* dismissal of complaint).

Indeed, the circuit court under review in *Barrett v. Guaranty Bank & Trust Co.*, 123 Ill. App. 2d 326, 260 N.E.2d 94 (1970), appeared to understand that proceeding *sua sponte* still required notice and hearing, even though the *Mason* court relied on *Barrett* as precedent demonstrating the validity of the summary dismissal of meritless claims. The circuit court in *Barrett* only dismissed the plaintiff's claim after it notified him that it believed there to be no cause of action stated in the complaint, and allowed him the opportunity to submit a brief in support of his pleading. *Barrett*, 123 Ill. App. 2d at 329, 260 N.E.2d at 96. Additionally, from the sparse facts presented in *Rhodes v. Mill Race Inn, Inc.*, 126 Ill. App. 3d 1024, 467 N.E.2d 915 (1984), another case relied on by *Mason*, we do not know that the circuit court in that case did not also provide for notice and an opportunity to be heard prior to dismissing the plaintiffs' claims *sua sponte*.

Thus, recognizing that the circuit court may have the inherent

power to dismiss *sua sponte* nonmeritorious claims on their pleadings does not automatically allow an alternative interpretation of *"sua sponte"* to permit courts to deny litigants notice and the opportunity to first be heard on the issues raised by the court on its own motion. See *Rubins*, 813 P.2d at 779 ("the court's use of its 'inherent power' effectively to bypass the rules of civil procedure is an evil to be avoided"). For example, though courts have inherent authority to discipline attorneys appearing before them (see generally *Chambers v. Nasco, Inc.*, 501 U.S. 32, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)), out of fairness, courts may not sanction counsel without first providing them notice and the opportunity to be heard regarding their alleged misconduct (*Patel v. Illinois State Medical Society*, 298 Ill. App. 3d 356, 370, 698 N.E.2d 588, 597-98 (1998); *Griffin v. Griffin*, 348 N.C. 278, 279-80, 500 S.E.2d 437, 438-39 (1998); see also *Hilliard v. Bennett*, 925 S.W.2d 338, 341 (Tex. Ct. App. 1996)). Thus, in *Patel*, while we acknowledged the circuit courts' inherent authority to *sua sponte* dismiss a complaint as a sanction, we reversed the circuit court's decision to do so in that case when it surprised the plaintiff by suddenly proposing dismissal, and then dismissing the complaint without affording the plaintiff the opportunity to argue against that sanction. *Patel*, 298 Ill. App. 3d at 370, 698 N.E.2d at 597-98.

There are sound policy reasons not to transform the measured prerogative of *sua sponte* dismissal, containing the safeguards of notice and the opportunity to be heard in response, into the drastic prerogative of summary dismissal without those safeguards. As pointed out in *Huminski*, although "a claim may be entirely spurious on its face, the court cannot know, without hearing the parties, whether the plaintiff may be able to amend the *** [pleading] sufficiently to state a claim entitling the plaintiff to relief." *Huminski*, 173 Vt. at 519, 787 A.2d at 492. Thus, summary dismissal can deny a litigant the opportunity to cure a defective pleading. *Lease Partners Corp.*, 329 Ill. App. 3d at 76-77, 768 N.E.2d at 59. Moreover, as pointed out in *Osborn*, pro se litigants, such as petitioner, are especially likely to be prejudiced by summary dismissals because their lack of legal acumen contributes to poor pleading. See *Osborn*, 848 P.2d at 241; accord *Palmer*, 53 Ill. 2d at 484, 292 N.E.2d at 382 (discussing how inmates' lack of sophistication can lead to their choice of the wrong kind of pleading). Additionally, it has been pointed out that summary dismissal deprives the courts of review of a complete record, possibly facilitating appeals of otherwise meritless cases and leading to overbroad appellate decisions. See *Huminski*, 173 Vt. at 520, 787 A.2d at 492; *Osborn*, 848 P.2d at 241.

Second, the legislature expressly provided for the summary dismissal of postconviction petitions in the Act; it did not do so in sec-

tion 2—1401. Section 2—1401 "provides a comprehensive statutory procedure" (*Pinkonsly*, 207 Ill. 2d at 562, 802 N.E.2d at 241), including the safeguards otherwise provided for pleadings under the Code (*People v. Reymar Clinic Pharmacy, Inc.*, 246 Ill. App. 3d 835, 840, 617 N.E.2d 35, 38 (1993)). The Code contemplates notice and hearings on motions, including those that may dispose of a case pretrial. See 134 Ill. 2d R. 104(b) (requiring service of postcomplaint pleadings on all parties); 735 ILCS 5/2—619(c) (West 2002) (involuntary dismissal statute: "[i]f, upon the hearing of the motion"); 735 ILCS 5/2—1005(c) (West 2002) (summary judgment statute: "[t]he opposite party may prior to or at the time of the hearing on the motion"); 134 Ill. 2d R. 184 (permitting any party to call a motion for hearing after its filing); *Pearson*, 345 Ill. App. 3d at 196, 802 N.E.2d at 390 ("[a] section 2—1401 petition invokes an adversarial proceeding brought under the Code"). When a court acts *sua sponte*, there is still a motion before the court, but it is the court's own motion. See *State ex rel. Dunbar v. Ham*, 45 Ohio St. 2d 112, 114, 341 N.E.2d 594, 596 (1976), quoting Black's Law Dictionary 1592 (4th ed. 1951) ("[t]he phrase 'upon its own motion' is identical in import to the expression '*sua sponte*,' which means '(o)f his or its own will or motion; voluntarily; without prompting or suggestion' "). Thus, the Code can be understood to presume that a *sua sponte* dismissal will be preceded by the giving of notice to the parties and an opportunity to be heard. It is a time-honored principle that " 'courts can only declare the law as they find it, and follow it as it is. The Legislature alone can make new laws or change *** rules of procedure.' " *People v. Northup*, 279 Ill. App. 129, 150 (1935), quoting *Welch v. People*, 30 Ill. App. 399, 414 (1889) (Moran, J., concurring); see also *O'Gara Coal Co. v. Emmerson*, 326 Ill. 18, 46, 156 N.E. 814, 825 (1927) ("[i]t is the province of the legislature, alone, to make the law and of the courts only to construe and apply it"). Courts should not read terms, exceptions, or procedures into an unambiguous statute that the drafter did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83, 630 N.E.2d 820, 823 (1994); *In re C.T.A.*, 275 Ill. App. 3d 427, 430, 655 N.E.2d 1116, 1119 (1995); *Morris v. Schwartz*, 326 Ill. App. 274, 306, 61 N.E.2d 690, 703 (1945) (Scanlan, J., specially concurring) ("nor have we the right, in interpreting this Act, to read into it provisions that, in our judgment, would tend to make the proceedings under the Act more equitable as between the parties"). Because summary dismissal is a drastic procedure, and a significant departure from the usual adversarial process (*Pearson*, 345 Ill. App. 3d at 194, 802 N.E.2d at 389), we do not believe that we should read summary dismissal procedures into the Code by analogy when the legislature did not express its intent to make that procedure available outside of the Act.

Our distinction between court-initiated dismissal procedures in the Act and the Code is also bolstered by the historical differences between the Post-Conviction Hearing Act and section 2—1401. Section 2—1401 codified historically rooted common law remedies, such as bills of review and writs of *coram nobis*. 735 ILCS 5/2—1401(a) (West 2002); *People v. Harvey*, 196 Ill. 2d 444, 452-53, 753 N.E.2d 293, 297-98 (2001) (McMorrow, J., specially concurring). These former common law remedies were typically subject to the same procedures applicable in other civil matters. See *People v. Kemnetz*, 296 Ill. App. 119, 124, 15 N.E.2d 883, 886 (1938). As noted earlier in this order, in other civil proceedings, we already held that a circuit court may not summarily dispose of a claim on its own motion. See *Peterson*, 313 Ill. App. 3d at 11-14, 729 N.E.2d at 83-85 . In this context, it makes sense to us that the procedures for dismissal are more conservative for section 2—1401 petitions than they are for postconviction petitions, as the remedy available under the Act is comparatively recently created and provided exclusively as a matter of legislative grace. *People v. Robinson*, 140 Ill. App. 3d 29, 34, 487 N.E.2d 1264, 1267 (1986).

Finally, we do not believe that the legislature considered summary dismissal to be an available means of disposition for the various forms of collateral relief it created other than the Act because it specifically provided that procedure in the Act. If the legislature recognized that courts could summarily dismiss claims under their inherent authority, it would have been unnecessary to include a summary dismissal provision in the Act. If the power of summary dismissal was otherwise available in the absence of specific statutory authorization, such as in the Act, then the summary dismissal provision of the Act would be mere surplusage. Moreover, we note that there are already provisions under the Code to discourage frivolous petitions for *habeas corpus*, *mandamus*, section 2—1401 relief, and other pleadings likely to be employed by prisoners. See 735 ILCS 5/22—105 (West 2002) (allowing for the assessment of filing fees and court costs against prisoners for frivolous pleadings and the recoupment of those penalties from their prison trust funds); see also 730 ILCS 5/3—6—3(d) (West 2002) (allowing the revocation of a prisoner's good-time credits for filing frivolous pleadings); *Mason*, 332 Ill. App. 3d at 845, 774 N.E.2d at 466 (Cook, J., dissenting) (acknowledging means, other than summary dismissal, for dealing with frivolous prisoner suits).

■ Although we conclude that the circuit court erred in summarily dismissing the present section 2—1401 petition, we nevertheless believe that harmless error analysis should apply and find the error in this case, in fact, to be harmless. In this respect, we depart from *Pearson* and its progeny which held that not only was summary dismissal

under the Code error, but inherently prejudicial and therefore not subject to harmless error analysis. See *Pearson*, 345 Ill. App. 3d at 196, 802 N.E.2d at 390. While summary dismissal procedures may deprive a litigant of a legitimate opportunity to correct curable defects found in his pleadings, harmless error analysis should still be applied where the defects are patently incurable. See *People v. Taylor*, 349 Ill. App. 3d 718, 812 N.E.2d 581 (2004).

Taylor addressed a situation very similar to this case. There, a section 2—1401 petitioner alleged that his sentence, imposed in 1979, was void because it violated *Apprendi*. The *Taylor* court considered but declined to follow *Pearson* respecting harmless error, and held:

> "We may look beyond any alleged procedural defect where, as in this case, defendant's petition raised a pure question of law, was frivolous and completely without merit, and no prejudice resulted from the trial court's dismissal. Defendant's petition presented a purely legal issue to the trial court: whether his extended-term sentence was void, or whether *Apprendi* applied to his 60-year extended-term sentence which was imposed in 1979. This is a pure question of law, not of fact. In *People v. De La Paz* [citation], our supreme court held that *Apprendi* does not apply retroactively to cases on collateral review. [Citation.] Thus, defendant's claim was frivolous and without merit.
>
> Additionally, we find no prejudice to defendant resulted from the trial court's order summarily dismissing his petition. *** Here, defendant has not alleged, nor could he ever allege, any facts in his petition that would circumvent *De La Paz* and make his extended-term sentence subject to *Apprendi*. Thus, even if defendant had been given notice and an opportunity to be heard before the court dismissed his petition, he could not have cured its inherent defects." *Taylor*, 349 Ill. App. 3d at 720-21, 812 N.E.2d at 583.

We agree with *Taylor* and find its holding wholly applicable to this case. Like the *Taylor* petitioner, this petitioner's collateral attack on a sentence predating *Apprendi* is barred by *De La Paz*, 204 Ill. 2d at 428-29, 791 N.E.2d at 491. Nothing petitioner said at a hearing could have changed that fact. Further, nothing he could have said at a hearing could have removed his claim from the holding of *People v. Ford*, where our supreme court determined that when a defendant may receive a sentence of death, he may not assert *Apprendi* claims upon receipt of any lesser sentence, as *Apprendi* only applies to sentences above the underlying statutory maximum based on aggravating factors. *Ford*, 198 Ill. 2d at 73-74, 761 N.E.2d at 738. Here, petitioner was found eligible for the death penalty, the statutory maximum, but only received a sentence of natural life imprisonment. Just like the petitioners in *Owens* and *Taylor*, we find that the dismissal of

petitioner's claim was inevitable and that further proceedings in the trial court "would have little remedial effect and would only delay dismissal." *Taylor*, 349 Ill. App. 3d at 721, 812 N.E.2d at 584, citing *Owens*, 349 Ill. App. 3d at 45, 811 N.E.2d at 746.

The foregoing application of harmless error analysis is consistent with the general "duty of a reviewing court to consider the *** record as a whole and to ignore errors that are harmless." *People v. Benson*, 266 Ill. App. 3d 994, 1003, 641 N.E.2d 617, 624 (1994); accord *People v. Reese*, 121 Ill. App. 3d 977, 986-87, 460 N.E.2d 446, 452-53 (1984). More specifically, this approach is also consistent with the position of our supreme court in applying harmless error analysis to *Apprendi* violations even on direct appeal. See *People v. Thurow*, 203 Ill. 2d 352, 368-71, 786 N.E.2d 1019, 1028-29 (2003). There the court held that notwithstanding that the holding of *Apprendi* is constitutionally rooted, harmless error nevertheless applied. *Thurow*, 203 Ill. 2d at 368-71, 786 N.E.2d at 1028-29.

For all the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

JUSTICE McBRIDE, specially concurring:

Although I agree with the majority's decision to affirm petitioner's conviction, I do not agree that the trial court erred in dismissing this petition.

In this case, petitioner entitled his *pro se* pleading a "Motion to Vacate Unconstitutional and Void Judgments." Although he cited to section 2—1401, he alleged that his two natural life sentences were unconstitutional under *Apprendi* because the sentences were imposed based upon a finding of exceptionally brutal and heinous behavior. His petition in substance did not challenge the factual basis for the judgment of his convictions, but instead claimed he was unconstitutionally sentenced. Because his "Motion to Vacate" was in substance a postconviction petition, the trial court had the authority to and in fact did treat it as a postconviction petition when it was summarily dismissed. *People v. Gandy*, 327 Ill. App. 3d 112, 139 (1992); *People v. Johnson*, 352 Ill. App. 3d 442, 446-48 (2004).

The transcript of proceedings further reflect that the trial judge considered petitioner's pleading as a postconviction petition and his findings on the record show that the trial judge was dismissing petitioner's "petition" because it did not "state any grounds for relief."

During the court proceedings on April 17, 2003, the trial judge

specifically stated that petitioner's "post-conviction petition" was under advisement. On April 22, 2003, the judge said in open court on the record that a written order will be filed "dismissing his petition." The half-sheet, which is the certified entry of all the trial court's orders prepared by the clerk's office, indicates that the "post-conviction petition" was denied on April 22, 2003.

In his written order, the trial judge indicated that the petition sought relief from judgment pursuant to section 2—1401. The trial judge then described the nature and the law governing such petitions. The trial judge also said that the claims were procedurally barred, that petitioner's sentence was not void, and that the petition was untimely under section 2—1401. However, the trial judge also cited to a supreme court decision interpreting postconviction proceedings, specifically, *People v. Moore*, 177 Ill. 2d 421, 427, 686 N.E.2d 587, 591 (1997), and held that the petitioner's claims were barred by the doctrines of *res judicata* and waiver. Thus, it is clear from the record of court proceedings and the written order that the trial judge considered this pleading for what it was, a postconviction petition. Accordingly, I would affirm the trial judge's dismissal.

I do agree with the majority's conclusion that the instant petition cannot state any grounds for relief under *Apprendi*. As pointed out by the trial judge on the record during the court proceedings, the petitioner was sentenced to mandatory life in prison, not because of a finding that the murders were exceptionally brutal and heinous, but because petitioner was found guilty of murdering two people.

Therefore, I specially concur in the decision today for the reasons stated above.

PRESIDING JUSTICE O'MALLEY, specially concurring:

I concur with the majority's decision to affirm the circuit court's dismissal of the instant petition brought under section 2—1401 of the Code. 735 ILCS 5/2—1401 (West 2002). However, I disagree with the majority's finding of error and would hold that no error, harmless or otherwise, occurred in the court below.

There is a threshold question as to whether the circuit court recharacterized the petition from a section 2—1401 petition, which it was labeled, to a postconviction petition, as argued by the State. If the State is right, that would make the circuit court's summary dismissal unquestionably correct, since summary dismissal is specifically contemplated by the Act. However, I believe the majority is correct when it chose to reject the State's recharacterization argument and treat the petition as exactly what its author called it, a section 2—1401 petition. I recognize that the trial court refers to both the Act and sec-

tion 2—1401 of the Code. However, in its written ruling, the circuit court referred to it as a section 2—1401 petition and I have treated it as such.

The majority also draws a distinction between *"sua sponte,"* and "summary" dismissals and states that the terms are "not equivalent." 352 Ill. App. 3d at 942-43. In my view, the terms differ in that they refer to two different events or functions. *"Sua sponte"* means "without prompting or suggestion; on its own motion" (Black's Law Dictionary 1464 (8th ed. 2004)), and refers to the manner by which a matter may come before the court. "Summary" or "summarily" means "short, concise" or "without the usual formalities"; "immediate; done without delay" (Black's Law Dictionary 1476 (8th ed. 2004)), and describes one method by which a court may dispose of the matter it has raised. The majority held that summary dismissal is only available as an option under the Act, because of the permissive language therein. 725 ILCS 5/122—2.1(a)(2) (West 2002). The opinion further held that *sua sponte* dismissals may be appropriate if the circuit court, after raising the specter of dismissal, follows the procedural requirements attendant to that motion, even though it may see the petition as fatally flawed and not capable of successful amendment.

The question then becomes whether or not a court will always be required to compel a responsive pleading before disposing of a patently frivolous action. In my view, the answer is no.

The majority holds otherwise, following a line of recent cases from the Second District. In *People v. Gaines*, 335 Ill. App. 3d 292 (2002), the court held that the circuit court has no authority to dismiss a *mandamus* petition absent notice and hearing. In *People v. Shellstrom*, 345 Ill. App. 3d 175 (2003), the court reversed a *sua sponte* dismissal of defendant's petition, saying the latter was prejudicial. Finally, in *People v. Pearson*, 345 Ill. App. 3d 191 (2003), the court went even further, stating that summary dismissal of defendant's section 2—1401 petition was inherently prejudicial and, therefore, not subject to a harmless error analysis. In the case at bar, however, the majority specifically rejected the *Pearson* court's position on harmless error, holding that because defendant's petition was completely lacking in merit, any error in its summary dismissal was harmless.

The Fourth District, on the other hand, has adopted a position which is diametrically opposed to that of the Second District. In *Mason v. Snyder*, 332 Ill. App. 834 (2002), the court held that circuit courts have the authority to *sua sponte* order stricken *mandamus* petitions the court finds to be frivolous. In *People v. Bramlett*, 347 Ill. App. 3d 468 (2004), noting the similarity between *mandamus* and section 2—1401 motions, the Fourth District approved a *sua sponte* dismissal

of a petitioner's section 2—1401 petition, finding it untimely and without merit. The rationale for these decisions is rooted in concern over burgeoning inmate litigation. The *Mason* court stated:

> "Thus, with the rules governing petitions for *mandamus* clearly laid out, we conclude that trial courts may evaluate such petitions to determine their sufficiency, particularly when filed by DOC inmates. In so concluding, we take judicial notice of our own records, which show an ever-increasing number of appeals brought by inmates in such cases, as well as the fact that DOC currently houses over 46,000 inmates. The potential to overwhelm the courts and the civil justice system by the filing of groundless DOC inmate *mandamus* petitions is clear and real, and one first step to deal with this situation is to recognize the trial court's authority to evaluate such petitions for their sufficiency.
>
> * * *
>
> *** [W]e now conclude that the trial courts, which have the inherent authority to control their courtrooms and their dockets, have the corollary authority to utilize their discretion in dealing with 'professional litigants' who inappropriately burden the court system with nonmeritorious litigation, stemming from their unhappiness as DOC inmates." *Mason*, 332 Ill. App. 3d at 840-42.

While I agree with the *Mason* and *Bramlett* courts that there is far too much court time wasted on meritless litigation, not just from inmates, but from civil litigants as well, my reasons for concluding that no error occurred here are different. I disagree with the elevation of form over substance and would not require that the circuit court engage in useless machinations where it has evaluated a matter and found it hopelessly flawed.

Further, I am struck by the lack of balance in a rule which requires compulsory responses in all circumstances where they are applicable. There appears to be scrupulous attention paid to the rights of the petitioner, criminal or civil, and little or none paid to those who are forced to respond to a frivolous petition. In the case of a criminal matter, the resources of the State are mobilized for a response, paid for by the taxpayer in squandered tax dollars. In the civil area, individuals are often required to waste substantial amounts of time and money defending against meritless lawsuits.

I subscribe to the reasoning of *Owens v. Snyder*, 349 Ill. App. 3d at 44, a decision from this court's second division. In *Owens*, the court approved a *"sua sponte"* dismissal of defendant's *mandamus* petition. While the instant case involves a section 2—1401 petition, it is like *mandamus* for purposes of our discussion, in that both are brought under the Code, which does not specifically provide for summary dismissal.

Although defendant had not been served, but noting that defendant's petition was indeed meritless, Justice Wolfson stated:

"There was nothing plaintiff could do to make it any better. He simply was off the track and could not get back on. We do not believe the legislature intended to require judges and clerks to jump through useless hoops aimed toward impossible goals ***.

We hold a trial judge has the inherent authority to dismiss a patently frivolous *mandamus* complaint before service on the defendant is issued." *Owens*, 349 Ill. App. 3d at 44.

In the case at bar, the majority, like the circuit court, reached the conclusion that petitioner's section 2—1401 petition had no hope of success. It was untimely by a matter of years. The judgment was not void and nothing tolled the time period in which a petition could properly be filed under the Code. Further, petitioner's core issue, a claimed *Apprendi* violation, was inherently erroneous. Petitioner complained that his sentence was inappropriately enhanced by the brutal and heinous nature of his crimes without submission of the same to a jury, thus offending *Apprendi*. Instead, it was actually enhanced based on defendant's multiple crimes. If the appellate court, based on a cold record and absent input from defendant, could clearly see and appreciate the fatal flaws in defendant's petition, I fail to see why the circuit court should not be trusted to do the same.